[Docket No. 22.]

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| MONIC SERRANO and DEBRA SHAW, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAMPBELL SOUP COMPANY,<br><br>Defendant. | Civil No. 24-cv-4660 (RMB) (MJS)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge:**

Strolling through a grocery store shoppers will see all kinds of products with labels describing the product such as "all natural," "sugar-free," "reduced fat," "made with real honey," and so on. The label at the heart of this lawsuit is on Defendant Campbell Soup Company's (Campbell) drink called "V8 Splash." Campbell offers V8 Splash in many flavors, like "Berry Blend." With pictures of fruits and vegetables on the label, Campbell markets Berry Blend as "A Berry Flavored Juice Beverage with a 5% Juice Blend From Concentrate and Other Natural Flavors."

Plaintiffs Monic Serrano and Debra Shaw bought V8 Splash at stores in their home state of California. They claim they were looking for drinks free of *any* artificial flavors and flavored *exclusively* from natural ingredients. The V8 Splash label does not say "all natural," "100% natural," "no artificial flavors" or anything similar. Still, Plaintiffs bought the non-refrigerated beverage thinking it contained *no* artificial flavors.

Plaintiffs now bring this putative class action against Campbell, claiming Campbell duped them into thinking V8 Splash is free of any artificial flavors or flavored exclusively from natural ingredients. According to Plaintiffs, V8 Splash, in fact, contains an artificial flavor—malic acid. Thus, Plaintiffs contend that Campbell violated New Jersey and California consumer protection laws because V8 Splash is misbranded under federal and state labeling laws, and the V8 Splash label misleads consumers. Plaintiffs also bring breach of warranty, misrepresentation, and fraud claims based on New Jersey's and California's laws, as well as laws from many States from coast-to-coast.

Campbell asks this Court to dismiss this putative class action, making several arguments ranging from Plaintiffs' lack of Article III standing to Plaintiffs' failure to plausibly allege that a reasonable consumer—reading the V8 Splash label—would believe V8 Splash has no artificial flavors or is exclusively flavored from natural ingredients.

This Court largely agrees with Campbell. So the Court **GRANTS**, **in part**, and **DENIES**, **in part**, Campbell's motion to dismiss. [Docket No. 22.]

## I. BACKGROUND

### A. The Juice

Campbell is not just a soup company. It makes and offers many products, like vegetable and fruit juices, including V8 Splash fruit juice. [Compl. ¶¶ 2, 35, 38 (Docket No. 1).] Campbell manufactures, distributes, and sells V8 Splash throughout the country, including in New Jersey and California. [*Id.* ¶ 35.] According to Plaintiffs, Campbell makes all its "fundamental decisions" about its V8 Splash such as the drinks' formulations, ingredients, packaging, labeling, and marketing from its New Jersey headquarters. [*Id.* ¶ 34.]

Campbell offers V8 Splash in many flavors, like "Berry Blend," "Strawberry Kiwi," and "Tropical Blend" (to name a few).[1]  [*Id.* ¶¶ 42, 51, 104.]  Campbell uses this front label for its Berry Blend juice:



[*Id.* ¶ 42; *see also* Campbell Mem. of Law in Supp. of Mot. to Dismiss 2 (Campbell Br.) (Docket No. 22-1).]  As the label reads, Berry Blend is "A Berry Flavored Juice Beverage with a 5% Juice Blend From Concentrate and Other Natural Flavors."  [*Id.*]  Berry Blend's front label depicts a few fruits (like berries) and some vegetables (like a carrot and sweet potato).  [Compl. ¶ 43.]

Berry Blend's back label provides the juice's nutritional facts and ingredients (depicted below).

---

[1] Plaintiffs challenge the following drinks in Campbell's V8 Splash line:  Berry Blend, Diet Berry Blend, Tropical Blend, Strawberry Kiwi, Cherry Pomegranate, and Fruit Medley.  [Compl. ¶ 51 n.1.]  While Plaintiffs' challenges stretch across all V8 Splash flavors, their challenges focus on the same portion of the label.  Accordingly, the Court focuses its discussion on the Berry Blend label, but the discussion applies to all flavors.





[Campbell's Br. at 3; Compl. ¶ 45.]  This lawsuit concerns only one ingredient, **malic acid**. [*See, e.g.*, Compl. ¶¶ 7, 15, 47, 57, 74, 77.]

Malic acid (sometimes called "apple acid") is a naturally occurring chemical that produces a tart flavor and is "found in apples, cherries, berries, and other tart fruits."  [*Id.* ¶ 64.]  The naturally occurring form of malic acid is called L-malic acid.  21 C.F.R. § 184.1069(a).  L-malic acid can be produced through a "double fermentation" process in which glucose is fermented into fumaric acid, and then that fumaric acid is fermented into L-malic acid.  U.S. Dep't of Agric., Agric. Mktg. Serv., *Summary of TAP Reviewer's Analyses: Malic Acid*, at 5 (Apr. 2003), available at: https://www.ams.usda.gov/rules-regulations/organic/petitioned-substances/l-malic-acid (last visited on March 23, 2025).  In other words, L-malic acid can be manufactured.  *Id.*  Malic acid can also be commercially produced through chemical means.  [Compl. ¶¶ 59, 108.]  This chemical derived malic acid is called DL-malic acid.  21 C.F.R. § 184.1069(a).  According to Plaintiffs, DL-malic acid "is made from petrochemicals, predominantly benzene or butane, with highly toxic intermediates and byproducts."  [Compl. ¶ 59.]

The Food and Drug Administration (FDA) has found malic acid (both forms), in general, to have a few purposes. It can be used as a "flavor enhancer," 21 C.F.R. § 184.1069(c)—that is, it is "added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own[,]" § 170.3(o)(11). It also can be used as a "flavoring agent and adjuvant," § 184.1069(c), meaning it is "added to impart or help impart a taste or aroma in food[,]" § 170.3(o)(12). And it can be used as a "pH control agent," § 184.1069(c), meaning it is "added to change or maintain active acidity or basicity[,]" § 170.3(o)(23). The Court now turns to why malic acid's inclusion in V8 Splash matters to Plaintiffs.

## B. The Malic Acid in V8 Splash

Plaintiffs purchased Campbell's V8 Splash several times at various stores located in California for "personal and household consumption[,]" spending, on average, $3 to $5 per purchase. [Compl. ¶¶ 36-37, 199-201.] In doing so, they allegedly relied on the V8 Splash label's "representations[.]" [*Id.* ¶¶ 36-37.] When making their purchases, Plaintiffs were looking for "products that were flavored only with the natural ingredients claimed on the labels and that did not contain artificial flavors." [*Id.* ¶ 125.] But, as previously noted, Plaintiffs claim they were duped because the malic acid in the V8 Splash is not natural—it is the artificial malic acid (DL-malic acid). [*Id.* ¶¶ 62, 108.] Laboratory testing confirms that the malic acid in V8 Splash is "artificial dl-malic acid." [*Id.* ¶¶ 74, 354.]

According to Plaintiffs, DL-malic acid is an "artificial flavor" under FDA regulations. [*See, e.g.*, *id.* ¶¶ 77, 105.] They claim Campbell has misbranded V8 Splash by failing to disclose that the drink contains an artificial flavor, and as such, has violated FDA labeling regulations

and California's labeling laws. [*Id.* ¶¶ 80-86.] The Court now turns to those laws and regulations.

### C. The FDA and the Sherman Law Regulations

The FDA regulates food labeling, including flavoring labeling. 21 C.F.R. § 101.1 *et seq.* The FDA finds a substance to be an artificial flavor or artificial flavoring if the substance's "function is to impart flavor," but the flavor "is *not derived from* a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." § 101.22(a)(1) (emphasis added). The FDA has identified many substances it considers to be artificial flavors. *Id.*; *see also id.* §§ 172.515(b), 182.60. The FDA defines natural flavor or natural flavoring to mean:

> the essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional.

*Id.* § 101.22(a)(3). The FDA has also identified several substances it considers to be natural flavors. *Id.*; *see also id.* §§ 172.510, 182.10, 182.20, 182.40, and 182.50 and part 184.

The FDA regulates the labeling of natural and artificial flavors. If a product's principal (or front) label makes a representation "with respect to the primary recognizable flavor[]" (like a picture of an apple), then the FDA considers that flavor "the characterizing flavor." § 101.22(i). If the product lacks an artificial flavor that "simulates, resembles or reinforces the characterizing flavor," the product's label may use the flavor's "common or usual name" (like apple). § 101.22(i)(1). The product may be labeled "natural flavored" if the characterizing

flavor is *naturally* derived from the product, even if the product lacks the ingredient. §
101.22(i)(1)(i) (emphasis added). So, for example, an apple flavored drink may be labeled as
"naturally flavored" even if there are no apples in the drink so long as the apple flavor is
*naturally* derived from apples. A drink must include "with other natural flavor" on its
principal display label when it "contains both a characterizing flavor from the product whose
flavor is simulated and other natural flavor which simulates, resembles or reinforces the
characterizing flavor." § 101.22(i)(1)(iii). Back to the apple flavored drink example. If a
natural pear flavor reinforces or resembles the apple characterizing flavor, then the label must
read "natural flavor . . . with other natural flavor." *Id.*

But if none of the flavors used in the product come from the product whose flavor is
simulated (like apple flavor, but not derived naturally from apples), then the FDA requires
the product to be labelled "either with the flavor of the product from which the flavor is
derived or as 'artificially flavored.'" § 101.22(i)(1)(ii). And if the product contains an artificial
flavor that "simulates, resembles or reinforces the characterizing flavor," the FDA requires
the product to be labelled as "artificial" or "artificially flavored." § 101.22(i)(2). Back to the
apple flavored drink. If the apple flavor comes from an artificial flavor, then the drink must
be labeled as "artificial apple," "artificially flavored apple," or "apple artificially flavored."
The FDA requires "[a] statement of artificial flavoring . . . be placed on the food or on its
container or wrapper . . . as may be necessary to render such statement likely to be read by
the ordinary person under customary conditions of purchase and use of such food." §
101.22(c).

Likewise, California's Sherman Food, Drug, and Cosmetic Law (Sherman Law)
imposes its own labeling requirements for artificial flavors. Cal. Health & Saf. Code § 110740.

The Sherman Law requires a label to state if the product contains "any artificial flavoring," otherwise, the product is "misbranded[.]" *Id.* In addition, the Sherman Law incorporates "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal [Food, Drug, and Cosmetic Act (FDCA).]" Cal. Health & Safety Code § 110100(a); *see also* § 109930. So if a label violates FDA labeling regulations, it also violates the Sherman Law.

Plaintiffs claim that the synthetic DL-malic acid that Campbell uses in V8 Splash reinforces or resembles the characterizing flavors of the drink. [Compl. ¶¶ 16, 75-76.] They agree the berries and fruits shown on the Berry Blend label contain "natural malic acid that would contribute to the tart flavor consumers expect from such fruits and berries." [*Id.* ¶ 65.] But they claim the berries and fruits depicted on the Berry Blend label are characterizing flavors for the drink, and the DL-malic acid Campbell uses in the drink "simulates, resembles, and reinforces the characterizing tart flavor of the fruits and berries listed and shown on the [drink's] front labels." [*Id.* ¶¶ 69, 76.] Because the DL-malic acid is synthetic, the argument goes, Plaintiffs assert that V8 Splash must be labeled artificial or artificially flavored as required by the FDA regulations and Sherman Law. [*Id.* ¶¶ 81-94.] According to Plaintiffs, Campbell, through its labeling decisions, "affirmatively [chose] to conceal from consumers that [V8 Splash] is artificially flavored." [*Id.* ¶ 100.] Plaintiffs also claim the V8 Splash label conveys to consumers that the drinks "are exclusively flavored only with natural fruits and berries and natural fruit and berry flavors." [*Id.* ¶ 103; *see id.* ¶ 123.]

## II. The Putative Class Action and Plaintiffs' Claims

Plaintiffs now bring this putative class action against Campbell, asserting several statutory consumer protection law claims, breach of warranty claims, and intentional and

negligent misrepresentation and fraud claims. [*See generally* Compl.] While Plaintiffs make many accusations about Campbell's V8 Splash, their claims, at bottom, focus on Campbell's failure to disclose that V8 Splash contains synthetic malic acid and the drink's label lack an artificial flavoring disclosure. [Compl. ¶¶ 18, 241(a)-(d), 257-60, 272, 282-86, 292, 307-08, 310, 316-19, 331-32, 353-58, 373-74, 377, 390, 398, 403-405.]

For their consumer protection law claims, Plaintiffs claim Campbell violated New Jersey's Consumer Fraud Act (NJCFA), N.J. Stat. Ann. §§ 56:8-1 *et seq.*, California's Consumers Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750 *et seq.*, California's Unfair Competition Law (UCL), Cal. Bus. & Prof. §§ 17200 *et seq.*, and California's False Advertising Law (FAL), Cal. Bus. & Prof. §§ 17500 *et seq.* [Compl. ¶¶ 247-313.] Plaintiffs bring a NJCFA claim for themselves and on behalf of a nationwide class that they define as:

> All U.S. residents who purchased the Products in the United States on or after January 1, 2016 and until the date the Class is certified by the Court, excluding [Campbell] and [Campbell's] officers, directors, employees, agents, and affiliates, and the Court and its staff.

[*Id.* ¶¶ 224, 247-67.] They bring their California statutory claims for themselves and a California Sub-Class that they define as:

> All California residents who purchased the Products in California on or after January 1, 2018 and until the date the Sub-Class is certified by the Court, excluding [Campbell] and [Campbell's] officers, directors, employees, agents, and affiliates, and the Court and its staff.

[*Id.* ¶¶ 225, 268-313.]

For their breach of warranty claims, Plaintiffs claim Campbell violated California's Commercial Code's warranty laws, Cal. Comm. Code § 2313 (express warranties) and § 2314

(implied warranties).  [Compl. ¶¶ 314-350.]  They also seek to bring multistate express- and implied-warranty claims on behalf of the following:

> All residents of New Jersey, California, Delaware, District of Columbia, Kansas, Missouri, Ohio, Utah, Virginia, or West Virginia, who purchased one or more of the Products as defined herein in one of those states on or after January 1, 2018, and until the date the Class is certified by the Court, excluding [Campbell] and [Campbell's] officers, directors, employees, agents, and affiliates, and the Court and its staff.

[*Id.* ¶¶ 226-27.]  Plaintiffs claim Campbell violated California's deceit laws by intentional and negligent misrepresentation and fraud, Cal. Civ. Code §§ 1709-10.  [Compl. ¶¶ 351-413.]  Plaintiffs seek to bring multistate misrepresentation and fraud claims on behalf of the following:

> All residents of New Jersey, California, Alabama, Alaska, Colorado, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Missouri, New York, North Dakota, Oregon, Texas, Utah, or West Virginia, who purchased one or more of the Products as defined herein in one of those states on or after January 1, 2018, and until the date the Class is certified by the Court, excluding [Campbell] and [Campbell's] officers, directors, employees, agents, and affiliates, and the Court and its staff.

[*Id.* ¶¶ 228-29.]  They also bring their negligent misrepresentation and fraud claims on behalf of a nationwide class and the California Sub-Class.  [*Id.* (Eighth, Ninth, and Tenth Causes of Action).]

Campbell now moves to dismiss, asking this Court to dismiss this entire class action based on several grounds.  [Docket No. 22.]

## III. Campbell's Motion to Dismiss

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The party seeking dismissal of the complaint must show it fails to state a claim. *See, e.g.*, *Zanetich v. Wal-Mart Stores E., Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). When reviewing a motion to dismiss, courts must accept the complaint's factual allegations as true and afford the plaintiff "every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). Courts will dismiss a complaint if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts will not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Malleus*, 641 F.3d at 563.

Generally, courts may only consider "the allegations contained in the complaint, exhibits annexed to the complaint[,] and matters of public record." *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 279 (3d Cir. 2018) (alteration in original) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). But when a complaint references extrinsic documents, courts can consider the documents so long as they are "undisputedly authentic" and "the complainant's claims are based upon [those]

documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016).

### B. Article III Standing

Campbell first argues Plaintiffs lack Article III standing to bring their claims, and therefore, this Court should dismiss this entire action. [Campbell Br. at 7-12.] Campbell's standing challenge is three-fold. [*Id.*]

First, Campbell argues that Plaintiffs have not plausibly alleged an injury in fact to have standing for any claim. [*Id.* at 9-10.] It contends Plaintiffs have failed to allege facts to quantify their loss, and they cannot prevail on a benefit of the bargain theory since they "received exactly what they bargained for." [*Id.* at 10.] Campbell goes on to argue that Plaintiffs cannot fall back on a price premium theory because they have not plausibly alleged facts showing "the difference in value between what was bargained for and what was received[.]" [Campbell Reply Mem. of Law in Supp. of Mot. to Dismiss 13-14 (Campbell Reply Br.) (citation and internal quotation marks omitted) (Docket No. 24).]

Next, Campbell asks this Court to throw out Plaintiffs' NJCFA claim and the multistate-law claims, contending Plaintiffs lack Article III standing to bring them. [Campbell Br. at 7-9.] Campbell points out that Plaintiffs are California residents, they viewed the challenged V8 Splash label in California, and they bought the drinks there. [*Id.* at 8.] Therefore, they lack standing to bring their NJCFA claim and any non-California state-law claims. [*Id.*] Said another way, Plaintiffs can only bring claims based on California law.

Lastly, Campbell argues Plaintiffs cannot obtain injunctive relief since they lack Article III standing. [*Id.* at 11-12.] Campbell contends that Plaintiffs now know about the malic acid used in V8 Splash, and so, are not in danger of suffering a future harm. [*Id.* at 11.]

Plaintiffs push back, arguing they have plausibly alleged an economic injury based on benefit of the bargain and price premium theories. [Pls.' Mem. of Law in Opp'n to Campbell Mot. to Dismiss 27-28 (Pls.' Opp'n Br.) (Docket No. 23).] According to Plaintiffs, they desired beverages that have no artificial flavors and that are flavored exclusively from natural ingredients. [*Id.*] Had Campbell complied with federal and state labeling laws, Plaintiffs would have known V8 Splash contains an artificial flavor, and as such, they would not have purchased V8 Splash or paid less for it. [*Id.*] They explain that beverages exclusively flavored from natural ingredients "sell for a price premium compared to artificially flavored products." [*Id.* at 27.] Put differently, artificially flavored drinks are cheaper to consumers than beverages without artificial flavors. [*Id.*] Because V8 Splash is misbranded, the argument goes, Plaintiffs paid more than they should have. [*Id.* at 27-28.]

Next, Plaintiffs contend their ability to assert a NJCFA claim and the claims in the multistate-law classes—based on laws from States around the country, *see supra* at 10—does not hinge on Article III standing.[2] [*Id.* at 7-11.] Instead, Plaintiffs claim their ability to raise those claims requires a choice-of-law analysis that is too premature for this Court to make. [*Id.* (collecting cases declining to conduct a choice-of-law analysis at the motion to dismiss stage).] And pointing to the New Jersey's Supreme Court decision in *International Union of Operating Engineers Local # 68 Welfare Fund v. Merck & Co.,* 929 A.2d 1076 (N.J. 2007) (*Merck*), Plaintiffs explain that the NJCFA has extraterritorial reach and applies to out-of-state transactions made by non-New Jersey consumers. [*Id.* at 11, 15.] And looking to *In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46 (D.N.J. 2009) (*Tele Aid*), Plaintiffs

---

[2] Plaintiffs make the confusing assertion they are not bringing claims "under . . . any states' laws other than California and New Jersey." [Pls.' Opp'n Br. at 16.]

assert courts in this District have certified class actions that applied the NJCFA on a nationwide basis. [*Id.* at 14; *see also id.* at 8 (citing *Dal Ponte v. Am. Mortg. Exp. Corp.*, 2006 WL 2403982 (D.N.J. Aug. 17, 2006)). Plaintiffs also argue they may raise NJCFA and the multistate-law claims on behalf of absent class members and that those members' standing is irrelevant until class certification. [*Id.* at 11-15.] They ask this Court to defer ruling on standing until class certification. [*Id.* at 11-12.]

Finally, Plaintiffs argue they have Article III standing to pursue injunctive relief because they intend to buy V8 Splash when the drink is no longer misbranded. [*Id.* at 28 (citing Compl. ¶ 226).] Pointing to two federal court decisions from California, Plaintiffs argue they have alleged a real and immediate injury entitling them to injunctive relief to prevent a future harm. [*Id.*]

### i. Have Plaintiffs plausibly alleged an injury in fact to survive dismissal?

Because Campbell challenges Plaintiffs' standing, this Court starts there because federal courts "have 'an obligation to assure ourselves' of a litigants' standing under Article III" of the Constitution. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006) (quoting *Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 582 U.S. 167, 180 (2000)). Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021). "[A] case or controversy can exist only if a plaintiff has standing to sue." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 286-87 (3d Cir. 2023) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). "To establish standing, a plaintiff must show an injury in fact caused by the defendant and redressable by a court order." *Texas*, 599 U.S. at 676. "[S]tanding is not dispensed in gross" and "plaintiffs must demonstrate standing for

each claim that they press and for each form of relief that they seek." *TransUnion*, 594 U.S. at 431. This is so because courts "do not exercise jurisdiction over one claim simply because it arose 'from the same nucleus of operative fact' as another claim." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (quoting *DaimlerChrysler,* 547 U.S. at 352)).

To establish an injury in fact, a plaintiff must show "she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). This is "very generous standard" to meet since a plaintiff only need to "allege some specific, identifiable trifle of injury" to walk through the courthouse doors. *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 164 (3d Cir. 2017) (cleaned up, internal quotation marks omitted) (quoting *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). When faced with a standing challenge, courts assume "a plaintiff has stated valid legal claims" to avoid blurring the lines between standing and the merits of the plaintiff's claims. *Cottrell*, 874 F.3d at 162.

A plaintiff claiming "financial harm will easily satisfy" the injury in fact showing because such harm "is a 'classic' and 'paradigmatic form' of injury in fact." *Id.* at 163 (quoting *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291, 293 (3d Cir. 2005)). One financial harm that can confer standing is "paying a [price] premium." *Pierre v. Healthy Beverage*, LLC, 2022 WL 596097, at *4 (E.D. Pa. Feb. 28, 2022) (alteration in original) (quoting *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *7 (S.D.N.Y. Aug. 12, 2016)); *see generally In*

15

*re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 282-93 (3d Cir. 2018) (*J&J*) (discussing various economic injury theories to establish standing).

To prevail on a price premium theory, a plaintiff must show the "defendant's misrepresentations or omissions caused that plaintiff to overpay for a product." *Estrada v. Johnson & Johnson*, 2017 WL 2999026, at *15 (D.N.J. July 14, 2017), *aff'd sub nom. J&J*, 903 F.3d at 293; *accord In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 54 F.4th 28, 35-36 (1st Cir. 2022). At the pleading stage, plaintiffs need not put a price tag on their economic injury. *J&J*, 903 F.3d at 287 (explaining plaintiff is not "required to allege the *exact* value of her economic injury at the pleading stage" (emphasis in original)). Instead, they must allege facts to "permit a factfinder to determine that [they] suffered at least *some* economic injury." *Id.* (emphasis in original). But "[t]hreadbare allegations" that the plaintiff paid a price premium is not enough to show "an injury in fact." *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 225 (D.N.J. 2022).

Plaintiffs here claim that food products that are naturally flavored "sell at a price premium compared to products that contain artificial flavors." [Comp1. ¶ 210.] They go on to explain that "naturally flavored" products that "contain only natural flavors . . . command a price premium." [*Id.* ¶ 211.] Said another way, artificially flavored products are cheaper for consumers than naturally flavored products. [*See id.* ¶¶ 210-11.] Plaintiffs allege that had Campbell put the required artificial flavor disclosure on the V8 Splash label they "would not have paid as much" for the drinks. [*Id.* ¶ 212.] And Plaintiffs claim that they viewed and relied on the V8 Splash label. [*Id.* ¶ 203.] According to Plaintiffs, the V8 Splash was "worth less" to them than what "they paid for" the drinks. [*Id.* ¶ 213.] They paid, on average, $3 to $5 for each V8 Splash. [*Id.* ¶ 201.]

Viewing those allegations through the injury in fact's "very generous" standard, *Cottrell*, 874 F.3d at 162, Plaintiffs have alleged an injury in fact based on the price premium they paid for V8 Splash. The price premium here is the difference between an artificially flavored fruit juice beverage that lacks the legally required artificial flavor disclosure and a fruit juice beverage flavored exclusively by natural ingredients—that is, no artificial flavors, or a properly labeled artificially flavored fruit juice. [Compl. ¶¶ 210-211.] Paying more for a product "constitutes a classic economic injury." *Pierre*, 2022 WL 596097, at *4 (finding similar allegations on price premium sufficient to show an injury in fact for standing purposes); *see also Seidl v. Artsana USA, Inc.*, 643 F. Supp. 3d 521, 529 (E.D. Pa. 2022) (finding plaintiff alleged enough facts to establish an economic injury in fact for standing where plaintiff alleged she chose a specific car seat thinking it was chemical free, paid more for the car seat for that reason, and the car seat had been treated with chemicals).

At this stage, this Court can presume from Plaintiffs' general allegations about the price of artificially flavored drinks "those specific facts that are necessary to support [their] claim." *Lujan*, 504 U.S. at 561. Because Plaintiffs have provided what they paid for V8 Splash (an alleged misbranded, artificially flavored beverage), a factfinder could quantify their economic injury by examining the difference in prices. That difference is the economic injury, whether it be in dollars or cents. *See Pierre*, 2022 WL 596097, at *4. At this stage, Plaintiffs are not required "to allege the *exact* value of [their] economic injury[.]" *J&J*, 903 F.3d at 287 (emphasis in original). All Plaintiffs need to survive dismissal is to allege "some specific, identifiable trifle of injury." *Cottrell*, 874 F.3d at 162 (cleaned up, internal quotation marks omitted) (quoting *Bowman*, 672 F.2d at 1151). Plaintiffs have done so.

Indeed, Plaintiffs allege that Campbell violated several state consumer protection laws and federal and state labeling laws, and those violations, in turn, caused them to suffer an economic harm because they would not have purchased V8 Splash or paid less for it had Campbell properly labeled it. [Compl. ¶¶ 208, 212-14.] Those allegations are enough to show Plaintiffs' injuries are "concrete" and "particularized." *Cottrell*, 874 F.3d at 167-68; *see also Pierre*, 2022 WL 596097, at *4. So Plaintiffs have alleged an injury in fact.

### ii. Do Plaintiffs have Article III standing to assert state-law claims from States that they do not reside in or have not suffered an injury in?

In the class action setting, a named plaintiff must have standing for every claim she seeks to press. *Neale*, 794 F.3d at 359 ("In the context of a class action, Article III must be satisfied 'by at least one named plaintiff.'" (quoting *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 223 (3d Cir. 2012))); *see also Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp.3d 194, 223 (D.N.J. 2020). The fact that a suit is filed as a class action "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Kentucky Welfare Rts. Org.,* 426 U.S. 26, 40 n.20 (1976) (quoting *Warth v. Seldin,* 422 U.S. 490, 502 (1975)). "[C]lass representatives must meet Article III standing requirements the moment a complaint is filed." *Neale*, 794 F.3d at 367.

Years ago, one court in this District said it best by recognizing the importance of requiring named plaintiffs to establish standing for each claim they press in class actions:

> [T]he [Supreme] Court's standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press. . . . Otherwise, a plaintiff would be able to bring a class action complaint under the laws of nearly every state in the Union without having to allege concrete, particularized injuries relating

18

> to those states, thereby dragging defendants into expensive
> nationwide class discovery, potentially without a good-faith
> basis. In other words, the plaintiff would have to do no more
> than name the preserve on which he intends to hunt.

*In re Magnesium Oxide Antitrust Litig.*, 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011) (second alteration in original) (citations and internal quotation marks omitted). This Court echoes that well-reasoned principle and joins the many courts in this District that have dismissed state-law claims in putative class actions where the named plaintiff neither resided in that State nor suffered an injury there. *See*, *e.g.*, *Snowdy v. Mercedes-Benz USA, LLC*, 2024 WL 1366446, at *5, *7 (D.N.J. Apr. 1, 2024) dismissing state-law claims "to the extent they are brought on behalf of a proposed nationwide class," including a NJCFA claim brought on behalf of a nationwide class, because "named plaintiffs 'lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where [p]laintiffs have suffered no alleged injury'" (alteration in original) (quoting *Ponzio*, 447 F. Supp. 3d at 223)); *see also In re Fragrance Direct Purchaser Litig.*, 2025 WL 579639, at *17-18 (D.N.J. Feb. 21, 2025) (ruling plaintiffs lacked Article III standing to pursue state-law claims from 30 states and the District of Columbia where named plaintiffs only resided in 11 of those states, reasoning the named plaintiffs have an "obligation to establish standing . . . [for] each and every claim they seek to pursue"); *Tijerina v. Volkswagen Grp. of Am., Inc.*, 2023 WL 6890996, at *8 (D.N.J. Oct. 19, 2023) (dismissing plaintiffs' nationwide claim "to the extent they are premised on state-law claims brought on behalf of putative class members outside of the eleven states represented by named Plaintiffs"); *In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, 2013 WL 5503308, at *11-12 (D.N.J. Oct. 2, 2013) (agreeing that "plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury," and dismissing several counts of complaint "to the extent they allege claims arising

19

under the laws of" states where plaintiffs did not reside or allege any injury); *accord Diaz v. FCA US LLC*, 2022 WL 4016744, at \*19 (D. Del. Sept. 2, 2022) (dismissing claims "to the extent that they are brought on behalf of a proposed nationwide Class of individuals residing in states other than those in which named Plaintiffs reside"); *U.S. ex rel. Krahling v. Merck & Co.,* 44 F. Supp. 3d 581, 588-89, 603 (E.D. Pa. 2014) (dismissing statutory claims under Pennsylvania law in putative class action for lack of Article III standing because no named plaintiff resided in Pennsylvania). Applying Article III principles, this Court finds that named plaintiffs in a class action lack Article III standing to bring state-law claims from States that they do not reside in or have not suffered an injury in. *McGuire v. BMW of N. Am., LLC*, 2014 WL 2566132, at \*6 (D.N.J. June 6, 2014) ("Plaintiff . . . lacks standing to assert claims under the laws of the states in which he does not reside, or in which he suffered no injury.").[3]

This Court does so for a few reasons. First, the Supreme Court and the Third Circuit have repeatedly held that a plaintiff needs to establish standing for every claim she seeks to press. *See, e.g.*, *TransUnion*, 594 U.S. at 431; *Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023). A class action does not change that standing requirement. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017) ("The requirements for standing do not change in the class action context.").

Plaintiffs confuse Campbell's standing argument and the Third Circuit's decision in *Neale*. Campbell is not challenging absent class members' Article III standing. That would

---

[3] This Court notes that a few courts in this District have found a named plaintiff's ability to assert state-law claims from States they are not from or have not suffered an injury in presents a predominance question to be resolved at class certification. *See, e.g.*, *Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co., Ltd.*, 2021 WL 960875, at \*6-7 (D.N.J. Mar. 15, 2021); *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505-06 (D.N.J. 2009); *accord Jones v. CVS Health Corp.*, 2024 WL 4643514, at \*8 (E.D. Pa. Oct. 31, 2024); *Garner v. Glob. Plasma Sols. Inc.*, 590 F. Supp. 3d 738, 743 (D. Del. 2022).

be a nonstarter because *Neale* held "unnamed, putative class members need not establish Article III standing." 794 F.3d at 362. But *Neale* did not resolve whether named plaintiffs have Article III standing to bring state-law claims from States that they do not reside in or have not suffered an injury in. *Ponzio*, 447 F.Supp.3d at 222-23; *Diaz*, 2022 WL 4016744, at *17, 19. While some courts in the Third Circuit appear to have read *Neale* broadly "to permit named class representatives who would not traditionally have Article III standing to bring claims on behalf of unnamed, putative class members who may have standing[,]" *Tijerina*, 2023 WL 6890996, at *8 n.3 (collecting cases), this Court does not.

Second, named plaintiffs bringing state-law claims from States that they do not reside in or have suffered no injury in presents an injury in fact problem. Again, Article III requires a plaintiff invoking a federal court's jurisdiction to show "an injury in fact"—meaning, the plaintiff suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 578 U.S. at 339 (quoting *Lujan,* 504 U.S. at 560). "'[L]egally protected interests' may arise from the Constitution, from common law, or 'solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Cottrell*, 874 F.3d at 164 (quoting *Lujan*, 504 U.S. at 576-78). Consumers, like Plaintiffs here, who seek to bring state-law claims from States that they do not reside in or have not suffered an injury in may not have suffered an invasion of a legally protected interest under those States' laws. Indeed, "[i]n the absence of a named [p]laintiff who has purchased a product within the relevant state—even if there are sufficient allegations of injury under other States' or federal law—there can be no determination that an interest was harmed that was *legally protected under the relevant state's laws.*" *In re Packaged*

*Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1095 (S.D. Cal. 2017) (emphasis in original).

Third, this Court will not wait to resolve standing until class certification. Why should defendants—and an overburdened Court—be dragged into protracted nationwide discovery for a class certification that may never come? *See Magnesium Oxide*, 2011 WL 5008090, at *10. *Neale* seems clear that courts must resolve the class representative's standing before class certification. 794 F.3d at 366 ("Before even getting to the point of class certification, . . . class representatives need to present a justiciable claim."); *accord Flecha v. Medicredit, Inc.*, 946 F.3d 762, 769 (5th Cir. 2020) ("[I]f it is the *class representative* who presents a standing problem, then *that* standing issue must be addressed first, prior to deciding class certification." (emphases in original)). Campbell challenges Plaintiffs' standing to assert a NJCFA claim on a nationwide basis and the state-law claims other than Plaintiffs' California claims. [Campbell Br. at 7-9.] Because the Court has before it a challenge to Plaintiffs' Article III standing, the Court sees "no practical benefit to waiting to decide standing until after a decision on class certification." *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 2022 WL 736250, at *17 (D. Del. Mar. 11, 2022).

The Court is unpersuaded by the non-Third Circuit cases cited by Plaintiffs. [Pls.' Opp'n Br. at 15-16.] For example, in *Langan v. Johnson & Johnson Consumer Companies, Inc.*, the Second Circuit held "whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III." 897 F.3d 88, 96 (2d Cir. 2018). In doing so, the *Langan* court declared:

> Since class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members, it makes little sense to dismiss the state law claims of unnamed class members for want of standing when

22

> there was no requirement that the named plaintiffs have individual standing to bring those claims in the first place.

Id. at 95.  It is hard to square that reasoning with both *Neale*, where the Third Circuit said, "In the context of a class action, Article III must be satisfied by at least one named plaintiff[,]" 794 F.3d at 359 (citation and internal quotation marks omitted), and a line of Supreme Court decisions requiring a plaintiff to establish standing for every claim she seeks to press.  *See, e.g.*, *DaimlerChrysler,* 547 U.S. at 352.  Other courts in the Third Circuit have found *Langan* and the other circuit cases that Plaintiffs rely on unpersuasive, too.  *Snowdy*, 2024 WL 1366446, at *7; *Sensipar*, 2022 WL 736250, at *17.  This Court joins those courts.

Against that backdrop, the Court agrees with Campbell that Plaintiffs lack Article III standing to bring state-law claims other than their California claims.  All agree that Plaintiffs are California residents and purchased the V8 splash there.  Thus, because Plaintiffs reside in California and bought the challenged V8 Splash there, Plaintiffs cannot bring a NJCFA claim on behalf of a nationwide class and all non-California claims in the multistate-law classes.  *See, e.g.*, *Snowdy*, 2024 WL 1366446, at *5, *7; *McMahon v. Volkswagen Aktiengesellschaft*, 2023 WL 4045156, at *8-9 n. 13 (D.N.J. June 16, 2023); *Ponzio*, 447 F. Supp. 3d at 223; *accord Diaz,* 2022 WL 4016744, at *19.  Indeed, having allegedly suffered an injury in California, Plaintiffs lack "Article III standing to pursue separate, distinct state-law claims under the laws of other states where they suffered no alleged injury."   *Tijerina*, 2023 WL 6890996, at *8; *accord Xi Chen Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014).

Still, pointing to *Merck*, Plaintiffs press their argument that they can bring their NJCFA claim on a nationwide basis because the law applies to out-of-state transactions.  [Pls.' Opp'n Br. at 8-9, 11, 15.]  Plaintiffs misread *Merck*.  First, *Merck* did not address standing.  Second, while New Jersey's Appellate Division in *Merck* affirmed the certification of a nationwide

class action against a drug manufacturer for violating the NJCFA and applying that law to the entire nationwide class based on New Jersey choice-of-law principles, 894 A.2d 1136, 1146-53 (N.J. Super. Ct. App. Div. 2006), *rev'd on other grounds*, 929 A.2d 1076 (N.J. 2007), the appellate court also found "New Jersey's contacts with [the] dispute [were] both extensive and weighty" because, among other reasons, the plaintiff class representative was "a joint union-employer Taft–Hartley trust fund, *organized and operating in New Jersey*," *id.* at 1139, 1148 (emphasis added).   Thus, unlike here where neither named Plaintiff is a New Jersey resident, *Merck* addressed a scenario where a New Jersey citizen (that most likely suffered an injury in the Garden State) brought a nationwide class action against another New Jersey citizen.   Third, the New Jersey Supreme Court reversed the Appellate Division's decision on class certification on grounds other than the appellate court's choice-of-law analysis.   929 A.2d at 1085-86, 1089.   But in doing so, New Jersey's highest court cast doubt on applying the NJCFA in a nationwide class action.    *Id.* at 1086 n.3 (explaining "certification of a nationwide class is rare, . . . and application of the law of a single state to all members of such a class is even more rare," and acknowledging defendant's "strong arguments" that under choice-of-law principles each plaintiff's home state law should apply).   Thus, *Merck* cannot save Plaintiffs' NJCFA claim brought on a nationwide basis from dismissal for lack of standing.

To sum up, the Court dismisses Plaintiffs' NJCFA claim brought on behalf of the nationwide class and all other state-law claims other than Plaintiffs' California claims for lack of Article III standing.

### iii. Even if Plaintiffs have Article III standing to assert a NJCFA claim, does New Jersey's choice-of-law principles bar Plaintiffs from doing so?

Plaintiffs contend they can bring their NJCFA claim along with their California statutory consumer fraud claims. [Pls.' Opp'n Br. at 7-9.] They argue their ability to do so requires a choice-of-law analysis that is too premature for this Court to make. [*Id.*] The Court disagrees. Even if Plaintiffs have Article III standing to assert a NJCFA claim, New Jersey's choice-of-law principles bar Plaintiffs from doing so.

The Third Circuit and many courts in this District often make choice-of-law determinations at the motion to dismiss stage in consumer fraud class actions like the one here. *Schechter v. Hyundai Motor Am.*, 2020 WL 1528038, at *6 (D.N.J. Mar. 31, 2020) (conducting choice-of-law analysis at motion to dismiss stage, and noting "the Third Circuit, and federal courts in this district, often adjudicate conflict-of-law questions at the motion to dismiss stage within the context of class action consumer fraud disputes, such as the one here"); *Feldman v. Mercedes-Benz USA, LLC*, 2012 WL 6596830, at *5 (D.N.J. Dec. 18, 2012) ("[C]ourts, including the Third Circuit, frequently determine that choice-of-law analysis in a putative class action can be done at the motion to dismiss stage."); *see also Cooper v. Samsung Elec. Am., Inc.,* 374 F. App'x 250, 255 n.5 (3d Cir. 2010) (rejecting plaintiff's argument "that the District Court erred in resolving the choice-of-law determination as to his statutory consumer fraud act claim at the motion to dismiss stage."). Courts in this District have resolved choice-of-law questions "on a motion to dismiss when the necessary facts are pled in the complaint." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 445 (D.N.J. 2012). Given Plaintiffs' allegations against Campbell, this Court can decide choice-of-law now because Plaintiffs have pled enough facts in their Complaint that the Court accepts as true. *See id.* at 445-48; *see also Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 709 (D.N.J. 2011).

First, the Court must determine whether the NJCFA and California consumer fraud statutes (CLRA, UCL, and FAL) conflict. *Freedom Mortg. Corp. v. Loancare, LLC*, 2023 WL 4366288, at *2 (D.N.J. July 6, 2023). They do. *Montich*, 849 F. Supp. 2d at 446 (finding NJCFA, UCL, and FAL conflict because the California consumer protection laws require as showing of reliance while NJCFA does not); *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 380 (D.N.J. 2014) (explaining "NJCFA materially conflicts with the consumer protection statutes of California, the CLRA and UCL"); *see generally Butera v. Honeywell Int'l, Inc.*, 2019 WL 1760844, at *3 (D.N.J. Apr. 18, 2019) (collecting cases and noting "[c]ourts in this District have consistently held that the NJCFA conflicts with California's consumer-fraud statutes, which do require a showing of reliance").

Because those laws conflict, the Court now must determine what State has the "most significant relationship" to Plaintiffs' consumer fraud claims. *Freedom*, 2023 WL 4366288, at *2. In consumer fraud actions, New Jersey courts look to factors in Section 148 of the Restatement (Second) of Conflict of Laws to determine what State has the most significant relationship. *Maniscalco v. Brother Intern. (USA) Corp.*, 709 F.3d 202, 207 (3d Cir. 2013); *see also Pet Gifts USA, LLC v. Imagine This Co.,* 2015 WL 5822584, at *5 (D.N.J. Oct. 2, 2015) ("Plaintiff's claim of consumer fraud is governed by Section 148 of the Restatement . . . which pertains to fraud and misrepresentation."). "Section 148 has two subsections: Section 148(1) applies when the defendant made the fraudulent representations in the same state in which the consumer relied on the representations, whereas Section 148(2) governs when the misrepresentations and the reliance occurred in different states." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 503 (D.N.J. 2014). If a defendant made the fraudulent representation in the same state the plaintiff received and relied on it, then there is

a presumption the law of that state applies.  Restatement (Second) Conflict of Laws § 148(1)

(1971).  If not, then courts must examine:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Id.* § 148(2).  Courts must view those factors against the "Restatement's predominant

choice-of-law principles under Restatement § 6" to determine which state has the most

significant relationship to the consumer fraud claim.  *Freedom*, 2023 WL 4366288, at *3.

"Those factors, '[r]educed to their essence,' are: '(1) the interests of interstate comity; (2) the

interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of

judicial administration; and (5) the competing interests of the states.'" *Id.* (alteration in

original) (quoting *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 463 (N.J. 2008)); *see also*

Restatement, *supra*, § 6.

Here, Section 148(2) applies because Plaintiffs allegedly received and relied on

Campbell's supposed misrepresentations in California where they bought the V8 Splash.

[Compl. ¶¶ 36-37.]  And Plaintiffs assert Campbell makes all its labeling and marketing

decisions from its New Jersey headquarters.  [*Id.* ¶ 34.]  Because, as pled, Campbell did not

make the misrepresentations in the State where Plaintiffs received and relied on them, Restatement Section 148(2) applies. *Arlandson*, 792 F. Supp. 2d at 709.

Most Section 148(2) factors favor California law. Indeed, Section 148(2)(a), (b), (d), and (e) all point toward California. Again, Plaintiffs are from California, that is where they received and relied on the alleged misrepresentations on the V8 Splash label, and that is where they brought the product. [Compl. ¶¶ 36-37.] Section 148(2)(f) does not apply because there is no contract here. Although Campbell is headquartered in New Jersey, Section 148(2)(d) still favors California. This is so because in consumer fraud cases, like the one here, a plaintiff's domicile and residence "'are more important than are similar contacts on the part of the defendant' . . . because 'financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship.'" *Pet Gifts*, 2015 WL 5822584, at *6 (quoting *Maniscalco*, 709 F.3d at 208). The remaining Section 148(2) factor— the place where defendant made the misrepresentation, § 148(2)(c)—favors New Jersey, but not enough to outweigh the other factors favoring California. *Maniscalco*, 709 F.3d at 208-09.

Indeed, even if Campbell misrepresented or omitted facts from the V8 Splash label from its New Jersey headquarters as Plaintiffs claim, those facts, if established, are still not enough to justify applying the NJCFA here. *Montich*, 849 F. Supp. 2d at 448-49 (refusing to apply the NJCFA under choice-of-law principles even though plaintiff alleged defendant was headquartered in New Jersey and alleged wrongful conduct emanated from New Jersey); *see also Maniscalco*, 709 F.3d at 208-09 (finding New Jersey did not have the "most significant relationship" to consumer fraud claim over South Carolina even where defendant's "actionable omissions" occurred at defendant's headquarters in "New Jersey"). So, even if

28

Campbell's alleged misconduct happened in New Jersey, the Court cannot ignore that California has an interest in having its consumer protection laws applied.

And the failure to recognize other States' interests is the main criticism of the caselaw that Plaintiffs rely on. [Pls.' Opp'n Br. at 8-9, 11 (collecting cases).] For example, the Third Circuit and several courts in this District have criticized *Tele Aid*. In fact, in *Maniscalco*, the Third Circuit rejected that court's reasoning, explaining:

> While, to be sure, New Jersey has an interest in deterring misconduct by corporations headquartered within its borders, it is far from clear that this interest would be sufficient to outweigh other significant contacts with a plaintiff's home state. New Jersey's deterrent interest might well be served by actions involving in-state plaintiffs or actions involving additional contacts within New Jersey without opening the floodgates to nation-wide consumer fraud class actions brought by out-of-state plaintiffs involving transactions with no connection to New Jersey other than the location of the defendant's headquarters.

709 F.3d at 210; *see also Schechter*, 2020 WL 1528038, at *7 (collecting many cases rejecting *Tele Aid*).[4]

Turning to the Restatement § 6 factors, they, too, favor California. *Montich*, 849 F. Supp. 2d at 450 (holding Restatement § 6 factors favored California law over New Jersey law in consumer fraud action where plaintiff brought the challenged product in California even though defendant was headquartered in New Jersey); *see also Maniscalco*, 709 F.3d at 209-10 (ruling Restatement § 6 factors favored South Carolina law over New Jersey law in consumer fraud action).

---

[4] Plaintiffs' other cases fare no better. *See generally Gray v. Bayer Corp.*, 2011 WL 2975768, at *6 (D.N.J. July 12, 2011) (explaining the *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233 (D.N.J. 2008) and *Dal Ponte* courts made their choice-of-law determinations based on the "government interest analysis" which the New Jersey Supreme Court later replaced with the most significant relationship test in *Camp Jaycee*, and "follow[ing] the weight of authority counseling against the application of the NJCFA to out-of-state consumers").

So even if Plaintiffs had Article III standing to bring a NJCFA claim, California has the most significant relationship to Plaintiffs' consumer fraud claims. *Cooper*, 374 F. App'x at 255 (holding plaintiff, "who purchased the television in his home state of Arizona, is not entitled to sue under the New Jersey consumer fraud statute[,]" reasoning "[t]he transaction in question bears no relationship to New Jersey other than the location of [defendant's] headquarters"). Thus, New Jersey's choice-of-law principles prohibit Plaintiffs from asserting a NJCFA claim. *Montich*, 849 F. Supp. 2d at 451 (dismissing NJCFA claim with prejudice after finding California has the most significant relationship to plaintiff's consumer fraud claims).[5]

### iv. Have Plaintiffs plausibly alleged they will suffer a future injury to receive injunctive relief?

To have standing for injunctive relief, Plaintiffs must show they are "likely to suffer 'future injury' from [Campbell's] conduct." *J&J*, 903 F.3d at 292 (quoting *McNair,* 672 F.3d at 223). "[T]he threat [of that injury] must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). When a plaintiff seeks injunctive relief to compel a defendant to engage in "corrective advertising" or stop "unlawful practices," *J&J*, 903 F.3d at 292, like Plaintiffs do here, Compl. (Prayer for Relief Q-R), courts have denied injunctive relief if the plaintiff knows about the product's risks or deceptive advertisement. *J&J*, 903 F.3d at 292 ("Because Estrada makes clear in this very lawsuit that she is well aware of health risks associated with using Baby Powder, we readily conclude that she is not likely to suffer future economic injury."); *McNair*, 672 F.3d at 225-26 (finding former

---

[5] All the more reason Plaintiffs' NJCFA claim fails is that they cannot simultaneously raise consumer protection laws of multiple states. *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 332 (D.N.J. 2014). This is so because "[a] [p]laintiff may bring state law claims *only* under the law of the state where he or she lived and the alleged injury occurred." *Id.* (emphasis added). Plaintiffs offer no authority that would allow them to simultaneously raise two states' consumer protection laws against a defendant based on the same conduct.

customers lacked Article III standing for injunctive relief because they were already aware of defendant's allegedly deceptive practices). This is so because "the law accords people the dignity of assuming that they act rationally, in light of the information they possess." *McNair*, 672 F.3d at 225.

Plaintiffs lack Article III standing for injunctive relief because, as pled, they are not likely to suffer a future injury because they know the malic acid in V8 Splash is allegedly an artificial flavor, and they will not buy anything with an artificial flavor. *See Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020) ("Because [plaintiff's] allegations reveal that she knows of Pep Boys's practices, [plaintiff's] request for injunctive relief amounts to a 'stop me before I buy again claim" that precludes Article III standing." (quoting *J&J*, 903 F.3d at 292-93))). Plaintiffs' injunctive relief claim is the sort of "'stop me before I buy again' claim" the Third Circuit has rejected. *J&J*, 903 F.3d at 293. This Court need not stop Campbell because Plaintiffs—by their own admissions—have made action by this Court unnecessary.[6] Therefore, the Court dismisses Plaintiffs' injunctive relief claim.

---

[6] Plaintiffs' reliance on *Branca v. Bai Brands, LLC*, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) and *Lozano v. Walmart*, 2024 WL 412606 (C.D. Cal. Feb. 1, 2024) is misplaced. Those courts relied on the Ninth Circuit decision in *Davidson v. Kimberly-Clark Corporation* where the court held:

> a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.

889 F.3d 956, 969 (9th Cir. 2018). But *Davidson* contradicts the Third Circuit's decisions in *J&J* and *McNair*, and as such, courts in the Third Circuit have uniformly rejected *Davidson*'s holding on injunctive relief. *See, e.g.*, *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 WL 1207791, at *31 (D.N.J. Mar. 31, 2021) (explaining "the Third Circuit and other courts have squarely rejected *Davidson*'s reasoning and conclusion, finding the threat of injury that repeat customers 'might suffer as a result of the company's advertising practices [to be] wholly conjectural.'" (alteration in original) (quoting *J&J*, 903 F.3d at 292)); *see also Rieger v. Volkswagen Grp. of Am., Inc.*, 2023 WL 3271116, at *7 (D.N.J. May 4, 2023) (rejecting *Davidson* because it "entertains the sort of stop-me-before-I-buy-again arguments" the Third Circuit has rejected). This Court rejects *Davidson*'s holding on injunctive relief too.

**C. Plaintiffs' California Consumer Law Claims: Unlawful Labeling and Consumer Deception**

Plaintiffs' remaining California consumer fraud claims fall into two camps: (1) consumer deception; and (2) unlawful labeling. Plaintiffs' consumer deception claims—based on the CLRA, UCL, and FAL, and including their fraud and misrepresentation claims—require them to prove that the V8 Splash label is likely to deceive reasonable consumers. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Plaintiffs' unlawful labeling claim—based on the UCL's unlawful prong—requires them to show Campbell violated a law while engaging in a business activity (like marketing, distributing, and selling V8 Splash). *Farmers Ins. Exch. v. Superior Ct.*, 826 P.2d 730, 734 (Cal. 1992). That law, Plaintiffs say, are the FDA and Sherman Law labeling regulations on artificial flavors. [Compl. ¶¶ 82-86.]

At their core, Plaintiffs' unlawful labeling and consumer deception claims are about Campbell's failure to disclose that V8 Splash contains an artificial flavor—DL-malic acid. [Compl. ¶ 100.] Without that required artificial flavor disclosure, Plaintiffs asserts the V8 Splash label conveys to consumers that the drinks "are exclusively flavored only with natural fruits and berries and natural fruit and berry flavors." [*Id.* ¶ 103; *see id.* ¶ 123.] As pled, Plaintiffs' claims hinge on: (1) whether the malic acid in V8 Splash is artificial; and (2) how Campbell uses the malic acid in the V8 Splash.

Thus, before turning to Plaintiffs' claims, this Court must determine whether Plaintiffs have plausibly alleged that the malic acid in V8 Splash is artificial and acts as an artificial flavor. In doing so, the Court views Plaintiffs' allegations through the lens of Federal Rule of Civil Procedure 9(b)'s heightened pleading standard because Plaintiffs' claims sound in fraud. *See, e.g., Davidson*, 889 F.3d at 964 (applying Rule 9(b) particularity requirements for CLRA, FAL, and UCL causes of action); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th

Cir. 2009) ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."). To satisfy that pleading standard, Plaintiffs "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964 (citation and internal quotation marks omitted); *accord United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019).

### i.  The Malic Acid Allegations

Campbell argues Plaintiffs have not plausibly alleged that the malic acid in V8 Splash is artificial since their allegation on laboratory testing is conclusory. [Campbell Br. at 19-20.] Pointing to several decisions from the United States District Court for the Southern District of New York, Campbell contends Plaintiffs' allegations about laboratory testing do not "lend plausibility" to their allegations that the malic acid is artificial. [*Id.* at 19 n.5 (collecting cases); Campbell Reply Br. at 8-9.] This Court disagrees.

To start, viewing the Complaint in Plaintiffs' favor, they have plausibly alleged the malic acid in V8 Splash is artificial. Throughout the Complaint, Plaintiffs allege that Campbell uses DL-malic acid in V8-Splash. [Compl. ¶¶ 47, 59, 62.] Plaintiffs backed that allegation up by claiming a "commercial food laboratory confirmed" that the malic acid in V8 Splash is "artificial dl-malic acid." [*Id.* ¶ 74; *see also id.* ¶ 354.] Plaintiffs also allege how DL-malic acid is manufactured, how it is not naturally occurring, why Campbell uses it, and how Campbell uses it in V8 Splash. [*Id.* ¶¶ 59-60, 73, 76, 79.] Taken together, those allegations are plausible to believe the malic acid in V8 Splash is artificial. *See, e.g.*, *Lozano*, 2024 WL 412606, at *8 (finding plaintiff plausibly alleged product contained artificial malic acid based on similar allegations).

Rule 9(b)'s particularity requirements do not require Plaintiffs to layout the testing methodology, who conducted the testing, or the tester's qualifications to survive dismissal. *See Gouwens v. Target Corp.*, 2022 WL 18027524, at *2 (N.D. Ill. Dec. 30, 2022) (rejecting defendant's argument that plaintiff failed to plausibly allege that drink enhancer contained artificial malic acid because plaintiff did not describe the "testing methodology[,]" reasoning such a pleading requirement "would exceed federal pleading standards"); *see also McCall v. Publix Super Markets, Inc.*, 2023 WL 2362542, at *4 (M.D. Fla. Feb. 28, 2023) (rejecting defendant's arguments that plaintiff did not plausibly allege that product contained artificial malic acid by failing to plead details about the laboratory testing); *Noohi v. Kraft Heinz Co.*, 2020 WL 5554255, at *3 (C.D. Cal. July 20, 2020) (finding plaintiff's failure to include "results of their testing" for malic acid "not fatal"). This is so because Rule 9(b)'s particularity requirements are necessary only "to place the defendant on notice of the precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original, citation and internal quotation marks omitted).

Plaintiffs' allegation that laboratory testing confirmed that V8 Splash contains DL-malic acid provides "some measure of substantiation" that the malic acid in V8 Splash is artificial. *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018). Those allegations are particular enough to satisfy Rule 9(b). *Scheibe v. Lifeaid Beverage LLC*, 2023 WL 6131082, at *4 (S.D. Cal. Sept. 19, 2023) (finding plaintiff's allegation that "testing by an independent third-party laboratory has confirmed that the malic acid that Defendant uses in these Products is DL malic acid" satisfied Rule 9(b)). If Campbell takes issue with Plaintiffs' laboratory testing allegations, it can probe them through discovery and challenge them at summary judgment or trial. *Scheibe v. Fit Foods Distrib., Inc.*, 2023 WL 7434964, at *14 (S.D. Cal. Nov.

8, 2023) (rejecting the same argument Campbell makes here, reasoning "trial or summary judgment, not a motion to dismiss, are the proper vehicles to contest the veracity of Plaintiff's factual allegations or criticize the quality of Plaintiff's evidence").

Turning to the malic acid's function, courts throughout the country have found that whether malic acid functions as a flavor is a factual call that cannot be made on a motion to dismiss. *Adams v. Kraft Heinz Co.*, 2022 WL 18776273, at *7 (M.D. Fla. Jan. 9, 2022) (explaining whether malic acid functions as a flavor "is ultimately a factual determination ill-disposed to resolution at [the motion to dismiss] stage"); *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 827 (N.D. Ill. 2021) (noting "numerous courts have found that the question of whether malic acid functions as a flavor or a flavor enhancer in a particular food product is a factual dispute inappropriate for resolution on a motion to dismiss"); *Sims v. Campbell Soup Co.*, 2018 WL 7568640, at *6 (C.D. Cal. Sept. 24, 2018) (agreeing that whether malic acid functions as an artificial flavor cannot be resolved at a motion to dismiss). This Court agrees because, as explained above, the FDA recognizes that malic acid can be used as a "flavor enhancer," "flavoring agent and adjuvant," or "pH control agent." 21 C.F.R. § 184.1069(c).

At any rate, Plaintiffs claim that Campbell adds DL-malic acid to V8 Splash to "simulate[], resemble[], and reinforce[] the characterizing tart flavor of the fruits and berries listed and shown" on the drink's front label. [Compl. ¶ 76.] So the acid is added for flavor. And pointing to Campbell's website, Plaintiffs allege that Campbell acknowledges it uses malic acid "in products where a tart taste is expected . . . ." [*Id.* ¶ 73.] Accepting those allegations as true, Plaintiffs have plausibly alleged the malic acid in V8 Splash is an artificial flavor. *Adams*, 2022 WL 18776273, at *7 ("Plaintiff's allegation that DL-malic acid is an

artificial compound that Defendant uses to flavor its Products, supported by laboratory tests, crosses the line from 'conceivable to plausible.'" (quoting *Iqbal*, 556 U.S. at 680)).

### ii. Unlawful Labeling:  Is V8 Splash misbranded?

Plaintiffs then claim that V8 Splash is misbranded because it contains an artificial flavor that Campbell failed to disclose.  [Compl. ¶¶ 82-86.]  They contend Campbell violated FDA and Sherman Law labeling requirements.  [*Id.*; *see also* Pls.' Opp'n Br. at 2-4.]  But Campbell argues Plaintiffs lack statutory standing to bring a claim under the UCL's unlawful prong because they have not plausibly alleged an economic injury.  [Campbell Br. at 11; Campbell Reply Br. at 14-15.]  Because Plaintiffs purchased a product that conforms to its label, the argument goes, Plaintiffs did not lose any money because of any regulatory infraction.  [*Id.*]

The UCL prohibits "unlawful" business acts or practices.  Cal. Bus. & Prof. § 17200. California's highest court has explained that the UCL's unlawful prong "borrows violations of other laws and treats [them], when committed pursuant to business activity, as unlawful practices independently actionable under [the UCL] and subject to the distinct remedies provided thereunder."  *Farmers*, 826 P.2d at 734.  "Virtually any law can serve as the predicate for [a UCL unlawful prong] action."  *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 891 (N.D. Cal. 2022) (quoting *Klein v. Earth Elements, Inc.*, 69 Cal.Rptr.2d 623, 625 (Cal. Ct. App. 1997)).  Therefore, to state a claim under the UCL's unlawful prong, Plaintiffs must allege Campbell violated some law.  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010).

On top of that showing, Plaintiffs must show statutory standing—that is, they "suffered [an] injury in fact and has lost money or property *as a result of* the unfair

36

competition." *Nacarino*, 668 F. Supp. 3d at 891 (emphasis in original) (quoting Cal. Bus. & Prof. § 17204).[7]  In cases involving false advertisement or misrepresentation, California's highest court has construed the phrase "as a result of" to "require[] a showing of a causal connection or reliance on the alleged misrepresentation." *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 887 (Cal. 2011).  "[A] consumer's allegation that 'she would not have bought the product but for the misrepresentation . . . is sufficient to allege causation . . . [and] to allege economic injury." *Davidson,* 889 F.3d at 965-66 (quoting *Kwikset*, 246 P.3d at 890).  Where, as here, a plaintiff claims an economic injury from a non-compliant FDA label, the plaintiff must allege that the "product's labeling didn't comply with FDA regulations and that the plaintiff wouldn't have purchased the product if the labeling had conformed with the regulation." *Brand v. KSF Acquisition Corp.*, 2023 WL 3225409, at *8 (S.D. Cal. Mar. 17, 2023).

Here, Plaintiffs have plausibly alleged that the V8 Splash label violates federal and California labeling laws because the malic acid in V8 Splash is an artificial flavor and the label lacks an artificial flavor disclosure.  21 C.F.R. § 101.22(c); Cal. Health & Safety Code § 110740.  They have also alleged an economic injury to have statutory standing under the UCL based on their price premium theory.  [Compl. ¶¶ 201-214.]  "Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson*, 889 F.3d at 965.  Plaintiffs' allegations on having to pay a price premium for V8 Splash that they should not have paid because Campbell did not

---

[7] The standing analysis for UCL and FAL claims are identical. *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 884-85 (Cal. 2011).  And a plaintiff who has standing under the UCL and FAL has standing to sue under the CLRA. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) ("[A]ny plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori,* have suffered 'any damage' for purposes of establishing CLRA standing.").

properly label V8 Splash, Compl. ¶¶ 199-201, 208-213, taken together, satisfy the UCL's economic injury requirement. *See Davidson*, 889 F.3d at 965-66 (finding similar allegations established economic injury); *see also Khasin v. Hershey Co.*, 2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012) (finding plaintiff satisfied UCL's statutory standing requirements where plaintiff alleged defendant's products' label did not conform to FDA labeling requirements, plaintiff would not have purchased the products if they had been properly labeled, and plaintiff did not receive full value of his purchase "because he did not obtain the products as advertised and described by the labeling").

Therefore, Plaintiffs have plausibly alleged a claim under the UCL's unlawful prong.[8] Accordingly, the Court denies Campbell's motion to dismiss Plaintiffs' UCL unlawful prong claim. That said, because this unlawful labeling claim appears to rise and could fall on the use of malic acid as an artificial flavor, the Court orders the parties to expedite discovery on whether: (1) the malic acid in V8 Splash is DL-malic acid as Plaintiffs claim; and (2) the malic acid provides flavor.

### iii. Would V8 Splash's Label Deceive a Reasonable Consumer?

Campbell asks this Court to dismiss Plaintiffs' consumer deception claims under the CLRA, UCL (fraudulent/unfair prongs), and FAL, arguing its V8 Splash label is not deceptive. [Campbell Br. at 13-17.] Campbell contends Plaintiffs' "artificial flavor theory" fails because its V8 Splash "labels do not make any representations about being free of

---

[8] If Plaintiffs are trying to base their UCL unlawful prong claim on violations of "federal and state 'presence or absence' labeling laws" and "food supplementation" laws, Pls. Opp'n Br. at 19-22, the Court dismisses those theories without prejudice. While Plaintiffs' Complaint mentions "presence or absence" labeling laws and "food fortification" laws, Compl. ¶¶ 129-168, Plaintiffs have explicitly framed their UCL unlawful prong claim on FDA and Sherman Law violations because, as pled, Campbell failed to disclose the presence of an artificial flavor given the use of DL-malic acid in V8 Splash, Compl. ¶¶ 281-87. Plaintiffs cannot amend their complaint in opposition to Campbell's motion to dismiss. *See Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation and internal quotation marks omitted)).

artificial flavor ingredients or that they are exclusively naturally flavored." [*Id.* at 13.] And pointing to several out-of-district cases, like *Lozano*, Campbell explains courts have rejected virtually identical consumer deception claims that Plaintiffs press here. [*Id.* at 13-15.] Campbell goes on to argue that no reasonable consumer would think V8 Splash's flavor comes only from the fruit images shown on the label given the label's written description. [*Id.* at 15-16.] Looking to that written description, Campbell asserts the V8 Splash label tells consumers that the drinks are a "flavored juice beverage with a 5% juice blend from concentrate and other natural flavors." [*Id.* at 16.] According to Campbell, if consumers need more information, they can look to the back label, which lists all the ingredients in V8 Splash, including malic acid. [*Id.*] Lastly, Campbell contends Plaintiffs cannot rely on any purported FDA labeling law violations because "consumer deception is not synonymous with" regulatory violations. [*Id.* at 20.]

Plaintiffs counter, arguing courts throughout the country have denied identical motions to dismiss because whether a label could deceive a reasonable consumer requires a factual determination that cannot be made at this early stage. [Pls.' Opp'n Br. at 4-6.] And pointing to *Sims* (a District Court from the Central District of California decision), Plaintiffs argue one court has already denied Campbell's motion to dismiss consumer deception claims over its V8 Splash label. [*Id.* at 5-6.] According to Plaintiffs, the *Sims* court found the plaintiff there had "adequately pleaded that a reasonable consumer could be materially misled by the labeling and advertising for V8 Splash." [*Id.* at 6 (citation and internal quotation marks omitted).] Plaintiffs contend V8 Splash labels could deceive reasonable consumers because they lack the required artificial flavor disclosure. [*Id.*] They then argue the V8 Splash label is

39

"inherently misleading" because it depicts various fruits and represents to be fruit flavored and have natural flavors even though the drink contains an artificial flavor. [*Id.* at 6-7.]

"California's UCL, FAL, and CLRA require basic fairness in advertising and permit a civil remedy against those who deceive consumers." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 777 (9th Cir. 2024). "[T]hese statutes prohibit explicitly false advertising and advertising that is 'either actually misleading[,] or which has a capacity, likelihood[,] or tendency to deceive or confuse the public.'" *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (alterations in original) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). The "reasonable consumer" standard governs these statutory claims, and requires a plaintiff to "show that 'members of the public are likely to be deceived.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Williams*, 552 F.3d at 938). This standard also governs Plaintiffs' fraud and intentional and negligent misrepresentation claims. *Oh v. Catalina Snacks, Inc.*, ____ F. Supp. 3d ____, ____, 2025 WL 352776, at *4 (C.D. Cal. Jan. 29, 2025) ("Common law fraud claims regarding misleading product packaging employ a similar reasonable consumer standard." (citing *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014))); *Garza v. Spectrum Brands Pet LLC*, ___ F. Supp.3d ___, ____, 2024 WL 5202472, at *2 (E.D. Cal. Dec. 23, 2024) (explaining the reasonable consumer standard "applies to common law fraud, intentional misrepresentation, and negligent misrepresentation claims."); *Robles v. Gojo Indus., Inc.*, 2022 WL 2163846, at *7 (C.D. Cal. Mar. 16, 2022) (explaining the "reasonable consumer standard . . . applies" to intentional and negligent misrepresentation claims, and dismissing plaintiff's misrepresentation claims where plaintiff based those claims on the "same alleged

misrepresentations" for her statutory consumer deception claims), *aff'd*, 2023 WL 4946601 (9th Cir. Aug. 3, 2023).[9]

"[T]he reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Whiteside*, 108 F.4th at 778 (quoting *Ebner*, 838 F.3d at 965). "[A] mere possibility that the label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner'" is not enough. *McGinity*, 69 F.4th at 1097 (quoting *Ebner*, 838 F.3d at 965); s*ee also Whiteside*, 108 F.4th at 778 (explaining "a complaint asserting a violation of these laws must allege that the packaging will deceive many consumers, not just that a few might be deceived"). A reasonable consumer "is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is the ordinary consumer within the target population." *Chapman v. Skype Inc.*, 162 Cal. Rptr. 3d 864, 872 (Cal. Ct. App. 2013) (citation and internal quotation marks omitted).

California courts (federal and state) have noted "that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to

---

[9] To be clear, Plaintiffs' intentional and negligent misrepresentation and fraud claims require a showing of "justifiable reliance." *See, e.g.*, *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1109-11 (C.D. Cal. 2015); *see also Scherer v. FCA US, LLC*, 565 F. Supp. 3d 1184, 1189 (S.D. Cal. 2021). "The reasonable consumer standard is similar to the reasonable reliance element of common law fraud." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010). Courts have applied the reasonable consumer standard to fraud and intentional and negligent misrepresentation claims because "justifiable reliance cannot be established if reasonable consumers would not rely on the purported misrepresentation." *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 562 (9th Cir. 2008); *see also Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1044 (S.D. Cal. 2015) ("Welk's intentional misrepresentation claim fails for the same reason his UCL and FAL claims fail—the use of 'handcrafted' on Jim Beam's bourbon bottle wouldn't mislead a reasonable consumer"); *accord Hill v. Roll Internat. Corp.*, 128 Cal. Rptr. 3d 109, 114-18 (Cal. Ct. App. 2011) (dismissing common-law fraud claims centered on product's label finding the label "would [not] mislead a reasonable person"). Said another way, if a statement is not misleading to a reasonable consumer, then no individual plaintiff could have justifiably relied on it.

dismiss]." *Williams*, 552 F.3d at 938-39 (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 236-37 (Cal. Ct. App. 2007)). That said, California courts have dismissed consumer deception claims at the motion to dismiss stage "when 'the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.'" *Whiteside*, 108 F.4th at 778 (quoting *Williams*, 552 F.3d at 939). Such dismissals are "rare[,]" *id.*, but not unheard of, *McGinity*, 69 F.4th at 1100 (affirming dismissal of UCL, FAL, and CLRA at motion to dismiss stage); *see also Garza,* ___ F. Supp.3d at ____, 2024 WL 5202472, at *5 (dismissing CLRA, UCL, FAL, common-law fraud, intentional and negligent misrepresentation claims because the product packaging would not mislead a reasonable consumer).

When confronted with consumer deception claims under California law, the Ninth Circuit has provided district courts with some guideposts to follow. *Whiteside*, 108 F.4th at 778-82. Courts must first look to the front label because "reasonable consumers are not expected to look beyond unambiguous misleading representations on the front label to determine the truth from the rest of the packaging, especially the ingredients list." *Garza,* ___ F. Supp.3d at ____, 2024 WL 5202472, at *3 (citing *Whiteside*, 108 F.4th at 778). "[I]f a product's front label is plausibly misleading to reasonable customers, then the court does not consider the back label at the pleadings stage." *Whiteside*, 108 F.4th at 778. "A front label is not ambiguous in a California false-advertising case merely because it is susceptible to more than one reasonable meaning." *Id.* at 782. Instead, "a front label is ambiguous when reasonable consumers would necessarily require more information before reasonably concluding that the label is making a particular representation." *Id.* at 781. "[I]nformation available to a consumer is not limited to the physical label and may involve contextual

inferences regarding the product itself and its packaging." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021). Only if the front label is ambiguous will courts turn to the back label. *Whiteside*, 108 F.4th at 781; *see also McGinity*, 69 F.4th at 1099 (holding that "when . . . a front label is ambiguous, the ambiguity can be resolved by reference to the back label").

### 1. Consumer Deception Through Labeling Law Violations

A theme runs through Plaintiffs' consumer deception claims: the V8 Splash label would deceive a reasonable consumer because the label violates FDA and Sherman Law labeling requirements. [Pls.' Opp'n Br. at 6.] Plaintiffs contend V8 Splash is deceptive to consumers because the label lacks the required artificial flavor disclosure. [*Id.* at 7.] This Court disagrees.

Courts have refused to find labeling law violations alone are enough to show a label is deceptive or misleading to a reasonable consumer. *Brand*, 2023 WL 3225409, at *6 ("Allegations a product's label violates an FDA regulation can't form the basis of a deceptive labeling claim under the reasonable consumer test."); *Nacarino v. Chobani, LLC*, 2021 WL 3487117, at *10 n.5 (N.D. Cal. Aug. 9, 2021) (ruling plaintiff could not use a "plausible violation of 21 C.F.R. § 101.22(i) . . . alone as the basis for her deceptive labeling claims, which implicate the reasonable consumer test"); *Brown v. Starbucks Corp.*, 2019 WL 996399, at *4 (S.D. Cal. Mar. 1, 2019) ("Starbucks' alleged failure to abide by federal and California advertising and food labelling requirements, without more, would not mislead a reasonable consumer."); *see also Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013) ("While regulatory violations might suggest that these statements might be misleading to a reasonable consumer, that alone is not enough to plead a claim under the FAL, CLRA, or the misleading/false advertising prongs of the UCL."). Some courts that have rejected the

very theory Plaintiffs press here have done so because the theory assumes a reasonable consumer knows about FDA labeling laws, which they may not. *See Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014) (dismissing UCL fraudulent prong claim, reasoning "[a] statement may technically violate some law and yet a reasonable consumer may have no dashed expectation about it").

What's more, allowing a plaintiff to base a UCL consumer deception claim based only on a labeling law violation would collapse two distinct UCL prong claims into one. *See id.* ("Holding that a reasonable consumer expects any product to comply with all applicable laws would render every [UCL] 'unlawful' claim a 'fraudulent' one as well."). Again, the UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives *captures a separate and distinct theory of liability*." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020) (emphasis added) (quoting *Rubio*, 613 F.3d at 1203). The reasonable consumer standard applies to UCL unlawful prong claims "only when it is an element of the predicate violation." *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 471-72 (9th Cir. 2017). So if the basis for a UCL unlawful claim is a violation of the FAL or the CLRA, then courts apply the reasonable consumer standard to the UCL unlawful prong claim because the FAL and CLRA prohibit consumer deception. *See id.* But if the UCL unlawful claim is based on an FDA or Sherman Law labeling law violation, then the reasonable consumer standard does not apply. *Silver v. BA Sports Nutrition, LLC*, 2020 WL 2992873, at *4 (N.D. Cal. June 4, 2020) ("[B]ecause the predicate violation [for plaintiff's UCL unlawful prong claim] is based on FDA regulations which include no requirement that the public be likely to experience deception, the reasonable consumer standard does not apply.").

44

For those reasons, Plaintiffs' allegations that V8 Splash violates FDA and Sherman Law labeling requirements are not enough to establish consumer deception. *Brand*, 2023 WL 3225409, at *6; *Nacarino*, 2021 WL 3487117, at *10 n.5; *cf. Fried v. Snapple Beverage Corp.*, ___ F. Supp. 3d ____, ____, 2024 WL 4479877, at *3 (S.D. Cal. Oct. 11, 2024) (ruling non-compliance with FDA guidance "*alone* is insufficient to show that 'members of the public are likely to be deceived'" (emphasis in original) (quoting *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020))). Accordingly, the Court looks to Plaintiffs' remaining allegations to see if they have plausibly alleged consumer deception.

### 2. Malic Acid and Consumer Deception

It bears noting that throughout the years, courts have grappled with consumer deception claims based on products containing malic acid. Some of those courts have denied motions to dismiss, finding the product's label could deceive a reasonable consumer when the plaintiff alleged the product contained DL-malic acid. In those cases, the labels had certain "buzz" words or phrases, like:

- "*No artificial flavors*," *Allred v. Frito-Lay N. Am., Inc.*, 2018 WL 1185227, at *4-5 (S.D. Cal. Mar. 7, 2018) (emphasis added);

- "*100% Natural Flavors*," *Tapia v. Coca-Cola Co.*, 2023 WL 2621346, at *3 (N.D. Cal. Mar. 23, 2023) (emphasis added);

- "*Naturally Flavored Sparkling Water*," *Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1322, 1328 (S.D. Cal. 2019) (emphasis added); or

- a combination of those words or phrases, "*naturally flavored*" and "*no artificial flavors*," *Hilsley v. General Mills, Inc.*, 376 F. Supp.3d 1043, 1046, 1049 (S.D. Cal. 2019) (emphasis added).

*See generally Gasser v. Kiss My Face, LLC*, 2017 WL 4773426, at *5 (N.D. Cal. Oct. 23, 2017) ("It is now well established in the Ninth Circuit that for purposes of a motion to dismiss a reasonable consumer could understand the statements '100% natural' or 'all natural' or

'natural' together with other terms implying 'all natural' to mean that a product does not contain any non-natural ingredients.").

Yet other courts have found reasonable consumers would not be duped.  In those cases, the courts found the labels would not convey to consumers that the product contains only natural flavors or are free from artificial flavors.  *Akers v. Cotsco Wholesale Corp.*, 631 F. Supp. 3d 625, 630, 634 (S.D. Ill. 2022) (granting motion to dismiss, finding label stating "Black Raspberry Flavor" and depicting black raspberries not deceptive even where plaintiff alleged artificial malic acid acted as a flavor because the "front label as a whole does not mislead consumers into believing the product only contains natural ingredients or lacks artificial ingredients"); *Griffin v. Publix Super Markets, Inc.*, 2024 WL 2318143, at *1-2 (M.D. Fla. May 22, 2024) (finding cereal bars with some labels stating "naturally flavored" and others omitting the word "natural" not deceptive, reasoning the "omission of a statement explaining that the bars contain artificial flavor" would not deceive a reasonable consumer).

And courts have split over the phrase "natural flavor with other natural flavor" with some courts finding a reasonable consumer would not understand the phrase to mean the product contains only natural flavors, and other courts finding it deceptive.  *Compare Lozano*, 2024 WL 412606, at *11 (finding drink enhancer's label that stated "natural flavor with other natural flavor" not deceptive, reasoning that "while a reasonable consumer may believe from the labels that the [enhancers] contain some natural flavors, based on the context, it would not be reasonable for a consumer to think that the [enhancers] contained *only* natural flavors" (emphasis in original)), *and Boss v. Kraft Heinz Co.*, 690 F. Supp. 3d 912, 913, 914-15 (N.D. Ill. 2023) (granting motion to dismiss, finding label that stated "Natural Flavor with Other Natural Flavors" in a product containing malic acid would not deceive a reasonable consumer

46

because label "does not amount to an affirmative representation that the [p]roduct is free from artificial flavors"), *with McCall*, 2023 WL 2362542, at *5-6 (denying motion to dismiss, finding label stating "natural flavor with other natural flavor" could deceive a reasonable consumer).

### 3. The Reasonable Consumer and the V8 Splash Label

Turning to the V8 Splash label here, the label tells consumers that the drink is "A Berry Flavored Juice Beverage with a 5% Juice Blend From Concentrate and Other Natural Flavors." [Compl. ¶ 42; Campbell Br. at 2.] Importantly, the label lacks any of the buzz words or phrases that courts typically have found could deceive reasonable consumers into believing the drink lacks artificial flavors, like "all natural," "100% natural," or "no artificial flavors." *Allred*, 2018 WL 1185227, at *4-5; *Tapia,* 2023 WL 2621346, at *3-4; *Hilsley*, 376 F. Supp.3d at 1046, 1049. Indeed, the V8 Splash label lacks any representation—express or implicit—that V8 Splash contains no artificial flavors. *See Trammell v. KLN Enterprises, Inc.*, 2024 WL 4194794, at *7 (S.D. Cal. Sept. 12, 2024) (finding front label stating, "Natural Strawberry & Raspberry Flavored Licorice" and "Naturally Flavored," "not unambiguously deceptive" because "nowhere on the front label does it affirmatively state that the product is 'all natural,' '100% natural,' or 'free of artificial ingredients'," and as such, "a reasonable consumer would not interpret the front label as unambiguously representing that Wiley Wallaby's Very Berry Licorice does not contain artificial ingredients"). Thus, a reasonable consumer would not interpret the V8 Splash front label as "unambiguously representing" that the products do not contain artificial flavors. *Whiteside*, 108 F.4th at 782; *see also Bryan v. Del Monte Foods, Inc.*, 2024 WL 4866952, at *1 (9th Cir. Nov. 22, 2024) (affirming dismissal of consumer deception claims, reasoning "the [product] front label 'does not promise that the

product is wholly natural,' as would a label declaring that a product is '100% natural' or 'all natural'" (quoting *McGinity*, 69 F.4th at 1098)).

And nothing about V8 Splash's written description conveys to consumers that the berry flavoring comes exclusively from natural berries or fruits, like the phrase "A Natural Berry Flavored" might do. *See Akers*, 631 F. Supp. 3d at 634. Indeed, "for a reasonable consumer to believe that an ingredient is the *exclusive* source of flavoring in a product, the product's labeling must contain statements or other expressive content explicitly stating or clearly implying as much." *Nacarino*, 2021 WL 3487117, at *7 (emphasis in original). The V8 Splash label might lead consumers to draw some conclusions about the fruit flavor ingredients in the drink, but would not lead consumers to think the drink's berry flavor comes only from natural ingredients. *See Brown*, 2019 WL 996399, at *2-4 (dismissing consumer deception claims, reasoning the "watermelon, tangerine and lemon flavored candies" statement on product label would not "lead a consumer to believe that the [product] contain[s] only natural ingredients"); *see also Lozano*, 2024 WL 412606, at *11. Plaintiffs' claim that V8 Splash label conveys to consumers that the drink has no artificial flavors and the flavor comes exclusively from natural ingredients rests on "unreasonable assumptions about [the] product's label[,]" and as such, "will not suffice" to show consumer deception. *Moore*, 4 F.4th at 882.

Just as the V8 Splash label's written product description would not dupe a reasonable consumer, the pictures of the fruits and vegetables on the label would not either. At best, those pictures are "visual representation of the taste or flavor of the product." *Lozano*, 2024 WL 412606, at *11. The pictures, even coupled with the written description, do not convey to consumers that the drink lacks any artificial flavors or that the drink's fruit flavor comes exclusively from the fruits shown on the label. *See Nacarino*, 2021 WL 3487117, at *6 ("While

48

the imagery may suggest that at least some of the [yogurt's] flavor is derived from vanilla bean or extract, it in no way implies that they are the *exclusive* flavor source." (emphasis in original)).

What's more, Plaintiffs' reading of the V8 Splash label defies common sense.  The reasonable consumer does not leave his or her common sense at the grocery aisle.  *Weiss v. Trader Joe's*, 838 F. App'x 302, 303 (9th Cir. 2021); *see also La Barbera v. Ole Mexican Foods Inc.*, 2023 WL 4162348, at *11 (C.D. Cal. May 18, 2023) (explaining "the reasonable consumer does not approach purchasing decisions with a professorial genius or inclination toward exhaustive research, but she is also not a chump, too doltish or careless to engage in [a] simple analysis"), *appeal dismissed,* 2023 WL 11823366 (9th Cir. Sept. 27, 2023).  Indeed, the reasonable consumer may make determinations about the product from "contextual inference [about] the product itself and its packaging."  *Moore*, 4 F.4th at 882.  V8 Splash provides a few context clues for consumers to surmise the drink contains artificial flavors.

First, V8 Splash is a brightly colored, shelf-stable liquid—meaning it is not refrigerated. [Compl. ¶¶ 42, 104 (depicting Berry Blend, Strawberry Kiwi, and Fruit Medley); Campbell Reply Br. at 7.]  A reasonable consumer would not believe V8 Splash is squeezed from picked berries from a berry bush and completely free of artificial ingredients.  *See Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (dismissing consumer deception claims based on pasta's label that stated "All Natural" reasoning "the reasonable consumer is aware that Buitoni Pastas are not springing fully-formed from Ravioli trees and Tortellini bushes" (internal quotation marks omitted); *see also Lozano*, 2024 WL 412606, at *11 ("[A] 'reasonable consumer would not believe that a shelf-stable, bright red fruit punch flavored liquid water

49

enhancer was free of artificial ingredients absent an affirmative statement to the contrary.'" (quoting *Gouwens*, 2022 WL 18027524, at *2)).

Second, the term "flavored" on the label "implies that the [product] contain[s] artificial ingredients." *Brown*, 2019 WL 996399, at *3. Imagine a like-minded consumer, like Plaintiffs here, looking to buy orange juice derived solely from oranges—meaning, 100% natural orange juice. That consumer might look for products labeled "Orange Juice" or "Natural Orange Juice." A product labeled "An Orange Flavored Juice Beverage" would certainly give that consumer pause because she would want more information to determine whether the orange flavoring comes from natural oranges or something else.

So, too, here with the V8 Splash Berry Blend label because it does not "state that the product is 'all natural,' '100% natural,' or 'free of artificial ingredients.'" *Trammell*, 2024 WL 4194794, at *7 (finding front label stating "'Natural Strawberry & Raspberry Flavored Licorice' and 'Naturally Flavored' . . . not unambiguously deceptive"); *see also Bryan*, 2024 WL 4866952, at *1. Because the V8 Splash label lacks the buzz words or phrases reasonable consumers understand "to mean that [the] product does not contain any non-natural ingredients[,]" *Gasser*, 2017 WL 4773426, at *5, the label is "ambiguous" since "reasonable consumers would necessarily require more information before they could reasonably conclude that the front label was making a specific representation[,]" *Whiteside*, 108 F.4th at 780 (internal quotation marks omitted) (quoting *McGinity*, 69 F.4th at 1097).

All the more reason the V8 Splash label is ambiguous is the "Other Natural Flavors" description on the label. That phrase creates some ambiguity because it suggests the existence of another natural flavor. Indeed, depending on the context, the word "other" could mean "different" or "additional." Other, Merriam-Webster Online Dictionary,

https://www.merriam-webster.com/dictionary/other (last visited Mar. 12, 2025).  But where does that "different" or "additional" natural flavor in V8 Splash come from?  Is it from the fruits and vegetables shown on the label, or the "5% juice blend from concentrate"?  The V8 Splash front label does not reveal that information.  So, a reasonable consumer would need more information, and thus, the label is ambiguous.  *Whiteside*, 108 F.4th at 780; *see also Garland v. Kroger Co.*, 2025 WL 474914, at *9 (S.D. Cal. Feb. 12, 2025) (finding the terms 'naturally flavored' and 'made with real fruit' on label ambiguous as to whether fruit bars are "flavored only with natural flavors and blueberries" and explaining "reasonable consumers would require more information to make that determination").

Because the V8 Splash front label is not "unambiguously deceptive[,]" *McGinity*, 69 F.4th at 1098, "a reasonable consumer would look at the back label." *Bryan*, 2024 WL 4866952, at *1.  V8 Splash's ingredient list discloses all ingredients, including malic acid. [Compl. ¶ 45; Campbell's Br. at 3.]  Viewing that ingredient list would dispel a consumer's belief that V8 Splash lacks artificial flavors or receives its flavor only from natural ingredients, Compl. ¶ 125, since the list discloses artificial ingredients.  *McGinity*, 69 F.4th at 1098; *see also Garland,* 2025 WL 474914, at *9 ("A reasonable consumer would see the artificial ingredients on the list and realize that the Product's flavoring is not entirely natural.").  That the ingredient list discloses malic acid as opposed to DL-malic acid is irrelevant because FDA regulations do not require Campbell to specify.  21 U.S.C. § 343(i)(2); 21 C.F.R. § 101.4(a)(1); *see also Branca,* 2019 WL 1082562, at *6 (explaining FDA regulations only require ingredients to be listed by their "common or usual name" and ruling FDA regulations did not require defendant to list malic acid as DL-malic acid in ingredient list).

In the end, Plaintiffs have not plausibly alleged that the V8 Splash label would deceive a reasonable consumer. And *Sims* has not persuaded this Court otherwise because that court denied Campbell's motion to dismiss after declining to grapple with the V8 Splash label's representations (or lack thereof) as this Court has done. 2018 WL 7568640, at *6. Moreover, after *Sims*, courts in the Ninth Circuit have often dismissed consumer deception claims like Plaintiffs' here. *Culver v. Unilever U.S., Inc.,* 2021 WL 2943937, at *4 (C.D. Cal. June 14, 2021) (collecting cases and explaining "there has been an ever-increasing number of cases (even within the Ninth Circuit) in which a motion to dismiss was found to be appropriately granted where the issue was whether a product label is (or could be) deceptive or misleading to a reasonable consumer"). And the *Sims* court did not have the Ninth Circuit's guidance on evaluating consumer deception claims at the motion to dismiss stage outlined in *Moore*, *McGinity*, and *Whiteside*. The Ninth Circuit has since declared that dismissing consumer deception claims at the pleading stage is appropriate "when 'the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived.'" *Whiteside*, 108 F.4th at 778 (quoting *Williams*, 552 F.3d at 939). This is one such case. Thus, the Court dismisses Plaintiffs' consumer deception claims under the CLRA, UCL, and FAL, as well as their intentional and negligent misrepresentation and fraud claims.[10]

---

[10] Again, Plaintiffs framed their consumer deception claims based on Campbell's failure to disclose the presence of an artificial flavor given the use of DL-malic acid in V8 Splash. Compl. ¶¶ 272-73, 298, 308-10. To the extent Plaintiffs are claiming consumer deception based on violations of "federal and state 'presence or absence' labeling laws" and "food supplementation" laws, Pls. Opp'n Br. at 19-22, the Court dismisses those theories without prejudice. Again, Plaintiffs cannot amend their Complaint in opposition to Campbell's motion to dismiss. *Olson,* 724 F. App'x at 166.

### D. Plaintiffs' Warranty Claims

As pled, Plaintiffs' express warranty claim fails. "To establish the existence of an express warranty, a plaintiff must point to a specific and unequivocal written statement." *Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 756 (N.D. Cal. 2021) (citation and internal quotation marks omitted). Plaintiffs claim that the V8 Splash label "falsely warrant[s]" that the drinks "are flavored only with the listed or depicted fruits and berries and natural flavors." [Compl. ¶ 320.] Up top, this Court explained that Plaintiffs' reading of the V8 Splash label is unreasonable because the label does not affirmatively represent that the drink is "all natural," "100% natural" or even "no artificial flavors." Courts have routinely dismissed express warranty claims based on the same alleged misrepresentations forming a consumer deception claim under the UCL, CLRA, or FAL. *Kim v. Bluetriton Brands, Inc.*, 2024 WL 243343, at *2 (9th Cir. Jan. 23, 2024) (finding district court properly dismissed plaintiff's complaint, finding "[p]laintiff's failure to plead consumer deception is fatal to all her claims[,]" including "breach of express and implied warranties"); *Weiss*, 838 F. App'x at 303-04 (affirming dismissal of warranty claims where plaintiff based "her warranty claims on the exact same representations as her consumer protection claim"); *Lee v. Nature's Path Food, Inc.*, 2023 WL 7434963, at *4 (S.D. Cal. Nov. 9, 2023) (dismissing breach of express warranty claim, finding warranty claim failed for same reasons that plaintiff's consumer deception claims failed). This Court does too.

Turning to their implied warranty of merchantability claim, Plaintiffs claim Campbell breached the implied warranty because the V8 Splash label fails to "conform to the promises or affirmations on the label." [Pls.' Opp'n Br. at 24 (quoting *Sims*, 2018 WL 7568640, at *9); *see also* Compl. ¶ 343 (citing Cal. Comm. Code § 2314(2)(f)). That theory fails for the same

reasons Plaintiffs' express warranty claim does. Indeed, "[w]hen an implied warranty of merchantability cause of action is based solely on whether the product in dispute '[c]onforms to the promises or affirmations of fact' on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1096 (N.D. Cal. 2017) (alteration in original) (quoting *Hendricks v. StarKist Co.*, 30 F.Supp.3d 917, 933 (N.D. Cal. 2014))); *see also Broomfield v. Craft Brew All., Inc.*, 2017 WL 3838453, at *10-11 (N.D. Cal. Sept. 1, 2017) (dismissing breach of implied warranty of merchantability claim based only on whether product "conforms to the promises or affirmations" on the product's label, finding plaintiff's implied warranty claim "indistinguishable from the express warranty claim"). So the Court dismisses Plaintiffs' implied warranty claim. *McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022, at *13 (S.D. Cal. Aug. 17, 2018) (dismissing implied warranty of merchantability claim under Cal. Comm. Code. § 2314(2)(f) because plaintiffs failed to plausibly plead their express warranty claim).[11]

---

[11] Plaintiffs have not responded to Campbell's argument that their implied warranty of merchantability claim fails because they have not alleged privity. [Campbell Br. at 22.] Under California law, a plaintiff asserting a breach of the implied warranty of merchantability under Cal. Comm. Code. § 2314, like Plaintiffs do here, "must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). Vertical privity requires "[a] buyer and seller to stand . . . [as] if they are adjoining links of the distribution chain." *Id.* "[A]n end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Id.* Plaintiffs are "end consumers" because they purchased V8 Splash at retail stores and not directly from Campbell. [Compl. ¶¶ 199-200.] So they need to allege vertical privity to bring their implied warranty of merchantability claim. *Clemens*, 534 F.3d at 1023. There are "particularized exceptions" to this vertical privity requirement. *Id.* It does not apply: (1) where "the plaintiff relies on written labels or advertisements of a manufacturer"; or (2) "in special cases involving foodstuffs, pesticides, and pharmaceuticals, and where the end user is an employee of the purchaser." *Id.* For "foodstuff" cases, "an implied warranty of fitness for human consumption runs from the manufacturer to the ultimate consumer regardless of privity of contract." *Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1048 (Cal. 1954). And in cases where the purchaser "relied on representations made by the manufacturer in labels or advertising material," recovery is allowed based on an express warranty theory "without a showing of privity." *Id.* at 1048-49. Plaintiffs here make no claim that V8 Splash is unfit for human consumption. In fact, Plaintiffs have apparently disavowed that theory. [Pls' Opp'n Br. at 24.] Likewise, and for reasons already discussed, their implied warranty claim based on V8 Splash failing to conform to the promises or affirmations on the label, as pled, fails. In their Complaint, Plaintiffs allege other bases for their implied warranty claim, like V8 Splash "would not pass without objection in the trade when packaged with their existing labels" because it is misbranded. [Compl. ¶ 342 (citing Cal. Comm. Code. §

## IV.  CONCLUSION

For the above reasons, the Court **GRANTS**, **in part**, and **DENIES**, **in part**, Defendant Campbell Soup Company's motion to dismiss.    [Docket No. 22.]    All dismissals are **WITHOUT PREJUDICE**.  An accompanying Order of today's date shall issue.

<u>**s/Renée Marie Bumb**</u>
RENÉE MARIE BUMB
Chief United States District Judge

Dated: March 27, 2025

---

2314(2)(a)).]  Given their opposition, it is unclear to the Court whether Plaintiffs are still pursuing that theory. Notwithstanding that lack of clarity, and given Plaintiffs' admitted lack of vertical privity with Campbell, it is unclear to the Court that they can maintain that theory.