## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN DIVISION

---

MONIC SERRANO, AND
DEBRA SHAW, on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

   v.

THE CAMPBELL'S COMPANY

        Defendant.

---

Civil No. 24-cv-4660 (RMB) (MJS)

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Monic Serrano and Debra Shaw ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through undersigned counsel hereby bring this First Amended Class Action Complaint against The Campbell's Company, and on information and belief and investigation of counsel, allege as follows:

## I.    INTRODUCTION

1.    This is a proposed consumer class action for the violation of California state consumer protection, unfair competition, and false advertising statutes, as well as for breach of express and implied warranties, negligent and intentional misrepresentation, and fraud by omission and in the inducement.

2.    Defendant The Campbell's Company ("Campbell" or "Defendant") manufactures, packages, labels, and sells multiple product lines of fruit-juice-based beverages that are falsely and misleadingly labeled and violate federal and state labeling and consumer protection laws.

3.    The products at issue all contain undisclosed added artificial flavors and chemical preservatives but all fail to inform consumers of this, both by omitting the federal- and state-required front-label and ingredient list disclosures and by affirmative false and misleading label statements such as, for example, "100% JUICE."[1]

4.    This First Amended Complaint (FAC) adds substantial additional factual and legal allegations to the initial filed Complaint.

5.    Three additional product lines, branded "V8 100% Juice," "V-Fusion," and "V8 Energy," comprising nineteen additional products, are now included.

6.    The FAC includes the allegations that all these Products fail to disclose and affirmatively misrepresent the fact that all the Products contain artificial flavoring and adds similar allegations because the Products also fail to disclose chemical preservatives.

7.    The FAC also adds specific allegations that the Products breach California statutory implied warranties and express warranties and further alleges that many of the Products also violate California's Unfair Competition Law based on violations of California's Sherman Law for corresponding violations of federal FDA regulations concerning the presence or absence of advertised ingredients and for improper food fortification and associated false advertising.

---

[1] As detailed herein, the products at issue in this lawsuit are identified as: V8 Splash, V8 100% Juice, V8 Energy, V8+ Energy, V8 Plus Energy and V8 Fusion (collectively "the "Products.")

8.     All the Products included herein, in each of these product lines, contain undisclosed artificial flavor and chemical preservatives but fail to inform consumers of these facts and thereby violate federal and state law. The products further make deceptive and unlawful affirmative claims on product labels.

9.     The "V8 Splash" products included in this action, which are labeled as if they were solely naturally flavored fruit juice products, consist almost entirely of water and corn syrup that is artificially flavored to taste like fruit juice. Some of these "V8 Splash" products contain no fruit juice whatsoever.[2]

10.     These Products also make unlawful claims regarding food fortification and violate federal and state "presence or absence" labeling laws.

11.     The other Products included herein are also juice products and juice-based products that likewise are labeled and advertised as if they were exclusively natural and naturally flavored, but all contain both undisclosed artificial flavoring and chemical preservatives.

12.     The Products all contain an undisclosed artificial flavoring called dl-malic acid, or 1-hydroxy-1,2-ethanedicarboxylic acid, discussed in detail below, which simulates, resembles, and reinforces the taste of fruits that the Products are named for and advertised on Product labels.

13.     None of the Products bear any of the federal- and state-law required mandatory labeling disclosing the artificial flavoring, or chemical preservatives, and instead affirmatively conceal the presence of the artificial flavoring.

14.     The Products are labeled as if they were solely naturally flavored beverages, with the names of fruits and berries and photo-realistic images of fresh, ripe, natural fruits and berries, and label claims to be "Naturally flavored" or "100% Juice" or "[Fruit] flavored with other natural flavors."

15.     The Product labels are designed to lead reasonable consumers to believe the beverages consist of and are flavored solely with natural fruit, fruit juices and fruit flavoring – or at least contain _some_ fruit juice – and are not artificially flavored.

---

[2] Plaintiffs are not broadly alleging that the Products fail to disclose that they contain artificial ingredients but rather fail to disclose that the Products contain artificial flavoring and preservatives.

16.     Reasonable actual consumers are, in fact, deceived by the Product labels into believing these Products contain no artificial flavors and base their purchasing decisions on that assumption.[3]

17.     Defendant violates California consumer protection laws by misbranding the Products and by failing to disclose and actively concealing from consumers that the Products contain artificial flavoring.

18.     Plaintiffs, who purchased the Products multiple times and were deceived by Defendant's unlawful and misleading labeling and advertising, bring this action on their own behalf and on behalf of those similarly situated, to halt and to remedy Defendant's unlawful conduct.

19.     On behalf of the Class as defined herein, Plaintiffs seek an order compelling Defendant to, *inter alia*: (1) cease falsely advertising and labeling the Products in violation of state consumer protection laws; (2) inform consumers regarding the Products' composition and misbranding; (3) award Plaintiffs and the other Class members restitution, actual damages, and punitive damages; and (4) pay all costs of suit, expenses, and attorney fees.

## II.     JURISDICTION AND VENUE

20.     Plaintiffs bring this proposed class action in this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).

21.     This Court has subject matter jurisdiction over this proposed class action under CAFA, 28 U.S. Code § 1332(d), which provides the federal courts with original jurisdiction over any class action in which any member of the plaintiff class is a citizen of a state different from any defendant and the matter in controversy exceeds $5 million in the aggregate, exclusive of interest and costs.

22.     Minimal diversity as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A) is satisfied as Plaintiffs as well as other members of the proposed class are citizens of states other than New Jersey and Defendant is a citizen of New Jersey.

23.     The jurisdictional amount in controversy is satisfied. Plaintiffs allege on information and belief that the total claims of the members of the proposed Class in this action exceed $5 million in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).

---

[3] Discussed in greater detail in Section 8, below.

24.     This matter is not a "local controversy" pursuant to 28 U.S.C. §1332(d)(5)(B). Plaintiffs allege on information and belief that more than two-thirds of the members of the proposed Class are citizens of states other than New Jersey and that the proposed Class contains more than 100 people.

25.     This Court has both general and specific personal jurisdiction over the Defendant.

26.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in New Jersey and the violative conduct occurred in the State of New Jersey.

27.     This Court further has specific personal jurisdiction arising from Defendant's decision to market, distribute, and sell the products that are the subject of this action in New Jersey.

28.     Defendant has sufficient minimum contacts with this State to render the exercise of jurisdiction by this Court reasonable and fair.

29.     Venue is proper in this County and this judicial district pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant is headquartered in and conducts business in this district. Defendant conducts business and engages in substantial transactions here, and the conduct complained of herein occurred in this district including specifically the alleged false labeling of the Products.

### III.    PARTIES

31.     Defendant The Campbell's Company ("Defendant" or "Campbell") is incorporated and organized under the laws of New Jersey and maintains a corporate headquarters and principal place of business in Camden, New Jersey.

32.     All fundamental decisions regarding Product formulations and ingredients and Product packaging, labeling, advertising, and marketing are controlled by Defendant at Defendant's corporate headquarters in New Jersey.

33.     Defendant advertises, markets, distributes, and sells the Products in California and throughout the United States, using nationally uniform product labels and advertisements.

34.     Plaintiff Monic Serrano is a resident and citizen of California and purchased the Products with their misleading and unlawful labels multiple times in Los Angeles, California, for personal and household consumption.  Serrano saw and considered the Product labels as set forth in the Complaint and relied upon the representations and the accuracy, completeness, and truth of the statements and other information provided therein in her decision to purchase the products.

35.     Plaintiff Debra Shaw is a resident and citizen of California and purchased the Products with their misleading and unlawful labels multiple times in Riverside County, California,

for personal and household consumption.  Debra Shaw saw and considered the Product labels as set forth in the Complaint, and relied upon the representations and the accuracy, completeness, and truth of the statements and other information provided therein in her decision to purchase the products.

## IV.    FACTUAL ALLEGATIONS

### 1. Defendant sells "fruit juice" beverages that are artificially flavored to taste like fruit but conceals from consumers that the products contain artificial flavors.

36.    Defendant manufactures multiple product lines of juice and juice-based beverages and sells these to American consumers.

37.    Defendant, in violation of federal and state consumer protection and false advertising laws, deceives consumers by illegally and intentionally omitting from Product labels the federal- and state-law required artificial flavor disclosures and by illegally labeling the Products with affirmative false label claims including, for example, "Naturally Flavored" and "100% JUICE."

38.    The Products that are the subject of this action include all fruit-based beverage products that Defendant manufactured and marketed during the proposed Class Period that contain or contained artificial flavor but were labeled and marketed as if they were solely naturally flavored. This description fits several lines of beverage products Defendant manufactures, described below.

### "V8 Splash" Products

39. Included among the Products here is a line of beverages Defendant calls "V8 Splash."

40.    These "V8 Splash" products are marketed to consumers, including to families with children, as naturally flavored, fruit-and-vegetable-juice beverages.

41.    Rather than natural fruit-juice beverages as advertised, the "V8 Splash" products described in this action consist almost entirely of water and high-fructose corn syrup that is artificially flavored to taste like fruit juice.

42.    These Products are labeled as if they contain only natural juices and flavors but in fact are artificially flavored beverages containing undisclosed artificial flavoring made from petrochemicals.

43.    Below (overleaf) is a true and accurate representation of the "V8 Splash Berry Blend" product.



[V8 Splash Product image]

44.    The "Berry Blend" Product's front label shows photographic images of ripe strawberries, raspberries, and blackberries, as well as a slice of what appear to be a carrot and sweet potato.

45.    The "V8 Berry Blend" Product consists almost entirely of water and high fructose corn syrup with token amounts of reconstituted dried carrot and sweet potato juice, and artificial flavoring and synthetic "Red 40" dye added to make it appear to be fruit juice.

46.    The ingredient list for this Product is, "Water, high fructose corn syrup, sweet potato juice concentrate, carrot juice concentrate, natural flavoring, citric acid, malic acid, vitamin C (ascorbic acid), Sucralose, Red 40, niacinamide (vitamin B3), licorice extract (for flavor), pyridoxine hydrochloride (vitamin B6), cyanocobalamin (vitamin B12)."

47.    In fact, the Product consists of nearly 95% water and corn syrup.

48.    This Product contains no fruit juice of any kind. It is water, high-fructose corn syrup, artificial sweetener, and added flavoring, with 2-3% or less each of reconstituted dried carrot and sweet potato juice.

49.    The labeled "malic acid" in the Product is actually dl-malic acid, a synthetic petrochemical compound that is an artificial flavor added to make the product resemble fruit juice.

50.    To label this product "Berry Blend" with pictures of fresh, ripe, actual berries, and to affirmatively conceal that the Product is artificially flavored and contains no berries, fruit, or fruit juice whatsoever, is intentionally misleading.

51.    It also violates federal labeling regulations and California state laws.

52.     The covert added artificial flavoring is required by federal and state law to be disclosed prominently on the front label.

53.     Instead, the Product unlawfully is labeled as if it contained only natural flavors.

54.     Under federal labeling law, incorporated verbatim into California's Sherman Law, a flavored food product is subject to mandatory labeling requirements.

55.     A flavored food product such as the Products must display one of the following four label disclosures as appropriate:

56.     1. Naturally flavored

57.     2. [Fruit] flavored

58.     3. Artificially flavored

59.     4. Naturally and artificially flavored.

60.     If a food product manufacturer affirmatively selects one of these options that does not include the mandatory "artificially flavored" disclosure this constitutes an affirmative labeling choice that represents and warranties that the product contains no artificial flavor. 21 CFR 101.22.

61.     Other "V8 Splash" Products included in this action are similarly unlawfully labeled and misbranded.

62.     The "V8 Splash" Products include, without limitation, V8 Splash Berry Blend, Diet Berry Blend, Tropical Blend, Diet Tropical Blend, Strawberry Kiwi, Cherry Pomegranate, and Fruit Medley, and any other "Splash" products sold during the Class Period that contained artificial flavor but unlawfully failed to inform consumers that the product was artificially flavored.

63.     These "V8 Splash" Products contain vanishingly little or in some cases no actual fruit juice, and affirmatively and intentionally misrepresent the Products as solely naturally flavored.

64.     None of the Products contain sufficient fruit or berry juice to make the beverage taste anything like the fruits named and shown on the labels.

65.     Instead, the Products are flavored with undisclosed artificial flavoring that simulates, resembles, and reinforces the misleadingly labeled and depicted fruits and berries.

66.     A significant percentage of reasonable consumers buy these Products because they are labeled and marketed as if they contain fruit juice in the form of the advertised fruit and berry juices and are not instead artificially flavored to simulate fruit juice.

67.     Consumers are misled by this labeling and advertising, as Defendant intends, and are damaged thereby.

<u>"100% Juice" Products</u>

68.    Defendant also manufactures and sells a line of beverage Products that Defendant labels and advertises as "100% JUICE."

69.     These Products similarly deceive consumers and violate federal and state law.

70.    The Products labeled "100% Juice" all contain artificial flavoring.

71.    They are not "100% juice."

72.    Defendant markets these products with advertising slogans including, "Our tasty, 100% juice blend is the real deal - no artificial flavors, colors, or preservatives. . . ."

73.    These Products contain artificial flavors and preservatives.

74.    Defendant advertises these Products as, "All Juice, Nothing but Juice," but these products in fact contain artificial flavors.

75.    None of these Products is "100% Juice."

76.    None of these Products informs consumers that they are artificially flavored.

77.    Defendant knowingly deceives consumers into buying these Products by advertising them as "100% JUICE" when instead these Products are all artificially flavored.

78.    Below is a true and accurate image of the label of one of the "100% Juice" Products, which deceptively and unlawfully advertises to consumers that the Product is purportedly 100% juice instead of an artificially flavored juice product.



[V8 100% Juice Product image]

79.    On the Products' side labels, Defendant further deceives consumers by repeating

the false claim in bold, block letters that the Product is "100% JUICE".

80.    Below is a true and accurate image of this claim as shown on Product side labels.



81.    This claim is false. Any consumer viewing a label claim that a Product is "100% Juice" is entitled to reasonably assume that the product is not artificially flavored.

82.    The "100% Juice" Products include, without limitation, Pomegranate Blueberry 100% Juice, Acai Mixed Berry 100% Juice, Strawberry Banana 100% Juice, and Blissfully Berry 100% Juice, as well as any other "100% Juice" Products that Defendant sold during the Class Period that were labeled as "100% Juice" but in fact contained undisclosed artificial flavor and thereby violated federal and state law.

83.    The labels of all these products claim that they are "100% Juice" and, in barely noticeable lettering, that the Products are "Naturally flavored."

84.    These affirmative label claims are unlawful and deceptive: the Products contain artificial flavoring.

85.    Like the "V8 Splash" products, none of these products display any of the federal- and state-law-required disclosures informing consumers that the products are artificially flavored or that they contain chemical preservatives.

86.    These Products all violate federal and state law.

V8 Energy and V Fusion products

87.    Defendant sells two additional product lines, "V8 Fusion" and "V8 Energy,"[4] that also contain artificial flavoring and chemical preservatives but unlawfully fail to disclose this on the Product labels and further make deceptive and unlawful label claims to be "Naturally flavored."

88.    The "V-Fusion" Products include, without limitation, the following flavors: V-Fusion Strawberry Banana, V-Fusion Pomegranate Blueberry, V-Fusion Black Cherry Apple, V-Fusion Fruit Punch, V-Fusion Black Cherry Berry.

89.    Defendant also deceptively labeled its "V-Fusion" Products as "100% Juice."

---

[4] These Products apparently may have been labeled at times as "V8+Energy" or "V8 Plus Energy."

90.     Defendant further affirmatively claimed that its "V-Fusion" Products "have no artificial flavors [or] preservatives[.]"

91.     These Products all contain artificial flavors and chemical preservatives.

92.     Below (overleaf) is a true and accurate image of a "V-Fusion" Product showing the front label. This is the V-Fusion "Black Cherry Apple" product. These "V-Fusion" Products were also labeled "100% Juice" but contain artificial flavor.



[V-Fusion Product image]

93.     Below is a true and accurate image of a "V8 Energy" Product.



[V8 Plus Energy Product image]

94.     The V8 "Energy" Products all claim on the front labels to be "Naturally Flavored."

95.    "Naturally Flavored" is a prohibited affirmative front-label claim because the Product contains artificial flavor.

96.    The "V8 Energy" Products include, without limitation:  Sparkling Pomegranate Blueberry, Wild Berry, Diet Strawberry Lemonade, Sparkling Strawberry Kiwi, Sparkling Black Cherry, Strawberry Banana, Black Cherry, Pomegranate Blueberry, Spiced Apple Cider (discontinued), and Winter Berry (discontinued).

97.    All the Products are labeled as if they were solely naturally flavored beverages, with the names of fruits and berries and photo-realistic images of fresh, ripe, natural fruits and berries.

98.    All the Product labels intentionally omit and fail to disclose that are artificially flavored, and the majority show unlawful affirmative front-label claims to be "Naturally Flavored" or "100% Juice," or "[Fruit] flavored," "with other Natural Flavors."

99.    Defendant admits that the dl-malic acid added to all the Products also functions as a chemical preservative.

100.    All the Products also omit the mandatory federal- and state-required disclosures that they contain chemical preservatives.

**2. The Products violate federal and California state law requiring labeling of artificial flavors.**

101.    All these Products violate federal and California state laws requiring front- and back-label disclosure of artificial flavors.

102.    An artificial flavor is "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 CFR 101.22(a)(1).

103.    Defendant adds dl-malic acid, an artificial flavor, to the Products to impart flavor that simulates, resembles, and reinforces the labeled characterizing fruit flavors.

104.    The dl-malic acid that Defendant adds to the Products is made from petrochemicals, predominantly benzene or butane, with highly toxic intermediates and byproducts.[5]

105.    Dl-malic acid is not made from "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material. . . ."

106.    There is a naturally occurring version of malic acid.

---

[5] Dl-malic acid is also known as 2-hydroxybutanedioic acid, hydroxysuccinic acid, or 1-hydroxy-1,2-ethanedicarboxylic acid.

107.    The dl-malic acid that Defendant puts in the Products, however, is not natural; it is a synthetic petrochemical manufactured in a chemical factory from petroleum feedstocks.

108.    Artificial dl-malic acid tastes like natural malic acid; it has never, however, been extensively tested for safety in human food.

109.    Natural malic acid is referred to colloquially as "apple acid."[6] Natural malic acid is found in apples, cherries, berries, and other tart fruits; it has a unique tart flavor that helps create and is associated by consumers with the taste of these fruits.

110.    All the fruits and berries the Products are named for and that are shown on the Product labels would – if they were fresh or present in the Products – contain natural malic acid that would contribute to the tart flavor consumers expect from such fruits and berries.

111.    Natural malic acid is a dominant fruit acid and fruit flavor in the fruits and berries named and shown on the Products' labels.

112.    Under federal regulations, any recognizable primary flavor identified on the front label of a food Product is referred to as a "characterizing flavor."

113.    Federal regulations state that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then such flavor shall be considered the characterizing flavor. See 21 C.F.R. 101.22(i).

114.    All the fruits and berries listed on the Products' front-labels are primary recognizable flavors and are therefore by law characterizing flavors of the Products.

115.    If a product's characterizing flavor is not created exclusively by the named ingredient, the product's front label must state that the product includes either natural flavor or artificial flavor or both.

116.    If any artificial flavor "simulates, resembles or reinforces" the characterizing flavor in the product, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. 101.22(i)(3), (4).

117.    Defendant admits that the malic acid used in their products is not natural.[7]

118.    A commercial food laboratory confirmed that the "malic acid" in the Products is

---

[6] U.S. Department of Agriculture, Summary of TAP Reviewer's Analysis, April 2003, *available at* https://www.ams.usda.gov/sites/default/files/media/L-Malic%20Acid%20TR.pdf, pp. 3-5.

[7] Campbell, https://www.campbells.com/v8/v8-blends-ingredients, last visited September 8, 2023.

artificial dl-malic acid.

119.    The laboratory analysis utilized a quantitative enzymatic reaction followed by variable-wavelength spectrophotometric detection to confirm the presence of artificial dl-malic acid in the Products.

120.    Defendant admits that malic acid is added to its products for flavor. Defendant states that they use artificial malic acid for flavoring "in products where a tart taste is expected[.]"[8]

121.    The tart flavor of artificial dl-malic acid simulates, resembles, and reinforces the Products' characterizing tart fruit flavors.

122.    The dl-malic acid in the Products simulates, resembles, and reinforces the characterizing tart flavor of the fruits and berries listed and shown on the Products' front labels.

123.    The dl-malic acid that Defendant adds to the Products is an artificial flavor under federal regulations and state law.

124.    Food ingredient suppliers offer both the natural and artificial versions of the flavoring ingredient malic acid.

125.    Defendant uses artificial dl-malic acid as a flavoring agent in the Products because it is cheaper than using natural fruits, fruit juices or flavors.

126.    21 C.F.R. 101.22(c) requires all foods containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

127.    Because the Products contain added artificial flavorings that simulate, resemble, and reinforce the Products' characterizing fruit and berry flavors, the Products' front labels are required by law to disclose the presence of those artificial flavorings rather than deceptively claim that the Products' flavor is provided only by natural flavorings.

128.    The Products all violate 21 C.F.R. 101.22(c).

129.    California's Sherman Law incorporates federal FDA regulations verbatim.

130.    Conduct that violates FDA regulations therefore by definition also violates California law.

131.    In addition, under California's Health & Safety Code, "[a]ny food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its

---

[8] Id.

labeling states that fact." Cal. Health & Saf. Code § 110740.

132.    All the Products violate the California Health and Safety Code.

133.    The Products also all contain chemical preservative and none of the Product labels disclose the function of this chemical preservative as required by law.

134.    Because it contains an artificial flavor, federal regulations and the laws of California require the Products to display both front- and back-label disclosures to inform consumers that they are artificially flavored.

135.    The Products have none of the required disclosures but instead falsely claim to be flavored only with "other natural flavors."

136.    The Products violate federal FDA regulations and state consumer protection laws.

137.    Defendant knowingly chose to label the Products unlawfully, deceiving and damaging consumers thereby.

138.    The Products are all misbranded and illegal to distribute or sell in commerce in California.

### 3. The Product labels affirmatively conceal that the Products are artificially flavored.

139.    All of the Products contain the undisclosed artificial flavor dl-malic acid.

140.    Because the Products contain either no fruit juice at all or only minuscule amounts, or are stored so long and so heavily processed that they no longer taste like fruit, Defendant adds artificial dl-malic acid to the Products to simulate, resemble, and reinforce a tart fruit taste that consumers expect from the fruits and berries advertised on the Product labels.

141.    FDA regulations set forth a mandatory labeling system which requires food and beverage manufacturers to choose one of three allowable label claims regarding natural and artificial flavors.

142.    Pursuant to federal and state law, a flavored food or beverage may only be labeled "Naturally Flavored," "[Fruit] flavored," "Artificially flavored," or "Naturally and Artificially Flavored."

143.    Unmodified label claims to be "[Fruit] flavored," "naturally flavored," "natural flavors," or "other natural flavors" are prohibited if the product contains artificial flavors.

144.    A manufacturer choosing to label a food product as "Berry flavored," "naturally flavored" or "other natural flavors" when that product contains artificial flavor is not simply an omission but rather intentionally and affirmatively choosing to conceal from consumers that the product is artificially flavored.

145.    None of the Products' labels display the federal- and state-required "Artificial

Flavor" label statement but instead affirmatively describe the Product as instead containing natural flavors.

146.    None of the Products include on either the front or back label any indication that any of the Products contains artificial flavoring.

147.    These Product labels warrant to consumers that the Products are exclusively flavored only with natural fruits and berries and natural fruit and berry flavors.

148.    Representative front label images are shown below for the V8 Splash "Strawberry Kiwi" and "Fruit Medley" products.

 

149.    All the Product labels, like that of the "Berry Blend" product, purposefully omit the legally required disclosures that the Products contain artificial flavor and instead affirmatively misbrand the Products as containing only "other natural flavors" when they in fact contain artificial flavor.

150.    The ingredient list for "V8 Splash Strawberry Kiwi" shows that the Product consists of "Water, high fructose corn syrup, vegetable juice (water and concentrated juice of carrots), malic acid, natural flavoring, vitamin C (ascorbic acid), Sucralose, Red 40, niacinamide (vitamin B), pyridoxine hydrochloride (vitamin B6), cyanocobalamin (vitamin B12)."[9]

151.    These are the ingredients listed on Product labels and on Defendant's webpage for

---

[9]    https://web.archive.org/web/20220120135307/https://www.campbellsfoodservice.com/product/juice-drink-strawberry-kiwi-2,  January 20, 2022.

this Product in 2022. At some time since then Defendant apparently began adding token amounts of kiwi and strawberry juice to the Product.

152.    The "malic acid" in these Products is similarly dl-malic acid, a synthetic petrochemical made from benzene or butane. "Sucralose" is an artificial sweetener and "Red 40" is synthetic food dye.

153.    The "Strawberry Kiwi" product contains insufficient fruit or berry juice to create either the taste or appearance of strawberry or kiwi, but instead contains artificial flavor, artificial sweetener, and artificial food dye to make the product look and taste as if it were fruit juice, which it is not.

154.    Even V8 Splash Product varieties that contain some fruit juice contain only token amounts – less than 1% of any of the named fruit juices.

155.    These products contain barely more fruit juice than chemical Red Dye #40.

156.    Under federal regulations and state law, the Product back-label ingredient lists are also required to disclose the presence of artificial flavorings.

157.    Federal regulations and state consumer protection laws require all food products that contain artificial flavor to disclose this fact to consumers prominently on both the front and back labels.

158.    None of the Products' labels anywhere include the required artificial-flavor disclosures.

159.    None of the Product labeling or ingredient lists inform the consumer, as required by law, that the Products contain artificial flavor.

160.    A food or beverage product may not be labeled "Naturally flavored" or "other natural flavors" if it contains any artificial flavoring that simulates, resembles, or reinforces the labeled characterizing flavor.

161.    The Products' affirmative label claims are prohibited label declarations for these Products because they violate federal and state law and falsely warrantee that the Products contain no artificial flavor.

162.    These Product label statements "Berry flavored," "Strawberry and Kiwi flavored," or "other natural flavors" are all illegal label claims in the absence of an accompanying artificial flavor disclosure. The Products are required by federal and state law to state prominently on the front labels, "Artificially flavored."

163.    Under the uniform mandatory national federal food-product labeling system, the Products' labels are affirmative statements constituting express warranties that the Products

contain only natural flavors and contain no artificial flavors.

164.    Reasonable consumers are by now accustomed to and rely on the uniform, nation-wide requirements that every food or beverage that contains artificial flavors states this fact prominently on the product's front label.

165.    American consumers may not be prepared to recite FDA regulations but are well-familiar by this time with the uniform nationwide food and beverage labeling practices that reflect those decades-old national requirements:  if a food or beverage product contains artificial flavoring it will always state prominently on the front label that the product contains "Artificial Flavor" or is "Artificially Flavored."

166.    Consumers therefore reasonably conclude from the Product packaging, consistent with decades of experience purchasing food products that comply with the uniform nationwide legal requirements, that the Products contain only natural juices and flavorings.

167.    Defendant deceptively fails to disclose the presence of artificial flavoring in the Products, and affirmatively misrepresents the Products as solely naturally flavored, unlawfully misleading consumers to believe that the Products are naturally flavored fruit juice products when in fact they are artificially flavored and either contain no fruit juice or only token amounts.

168.    Because Defendant failed to label the Products lawfully, and instead affirmatively and misleadingly labeled the Products as if they were solely naturally flavored, Plaintiffs were unaware that the Products contained artificial flavors when they purchased them.

169.    When purchasing the Products, Plaintiffs were seeking products of particular qualities, specifically products that were flavored only with the natural ingredients claimed on the labels and that did not contain artificial flavors.

170.    Plaintiffs are reasonable, ordinary consumers. Consumer surveys consistently show that most consumers will pay more for foods perceived as natural, specifically including foods with no artificial flavors.

171.    Plaintiffs and the Class lost money because of Defendant's conduct because they purchased products that contained undisclosed and undesirable artificial flavors.

172.     Defendant's marketing of the Products reflects this knowledge of consumers' preferences for natural products. Defendant intentionally conceals from consumers that the Products are artificially flavored.

### 4. The Products also violate federal and state food-ingredient "presence or absence" laws.

173.    The Products also violate 21 C.F.R. 102.5(c) and the corresponding California law

which incorporates FDA regulations by reference.

174.    A food product's label must also include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. 102.5(c).

175.    Such a statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.

176.    The "presence or absence" of any actual fruit juice in products marketed as fruit-juice-based beverages has a material bearing on price and consumer acceptance.

177.    Under the federal regulations and California state laws incorporating or reflecting those standards, Defendant must also inform consumers that the Products contain no fruit or berry juice, or only minuscule amounts of such juices, in addition to the mandatory artificial-flavor label statements.

178.    The Products' labels do not include any of the required label statements.

179.    U.S. Food, Drug, and Cosmetic Act regulations also require that a food's label accurately describe the food product and all ingredients.  See, 21 C.F.R. 102.5(a).

180.    The Products' labels therefore also violate 21 C.F.R. 102.5(a) and (c), and California law.

181.    California law prohibits any entity from making untrue or misleading statements about goods, engaging in unethical practices injurious to California residents or competing corporations and other entities, and from violating FDA and other federal regulations regarding consumer protections.

182.    Defendant was required to place prominently on the Products' front labels a notice sufficient to allow consumers to understand that the Products contain artificial flavorings and that they contain either no fruit juice whatsoever or only token amounts.

183.    Defendant failed to disclose in their labels not only that the Products contain artificial flavoring but also that some of the Products contain no fruit juice whatsoever and no Product contains any more than a token amount.

184.    FDA regulations further require that a food or beverage product label inform the consumer when any ingredient promised by the name or labeling of the product is absent.

185.    The federal guidance gives as an example that a product labeled "Strawberry Shortcake" that includes no actual strawberries must inform consumers on the label that the

product "Contains no strawberries."

186.    Those Products that contain no actual fruit juice or only de minimis amounts but are named for and show pictures on the labels of multiple fruits or berries must inform the consumer they contain no actual fruits or berries or juice thereof.

187.    "V8 Splash Berry Blend" contains no berries or the juice of any berries.

188.    The Products that contain no actual fruit juice are required to further inform the consumer by "presence or absence" labeling laws that they "contain 0% berry juice" or "contain 0% fruit juice" or "contain less than 1% kiwi juice."

189.    Defendant is a sophisticated manufacturer, marketer, and distributor of foods and beverages and is well aware of federal and state food labeling laws and regulations.

190.    Defendant chose not to comply with federal and state labeling laws.

191.    Defendant knew or should have known that the Products are mislabeled and misbranded.

192.    Defendant willfully and affirmatively conceals from consumers the fact that the Products are artificially flavored and many contain little or no actual fruit juice.

**5. The Products also violate federal and state food-fortification policy and laws.**

193.    The Products further violate federal and California state food-fortification labeling policy and are misleadingly advertised as a source of antioxidant vitamins.

194.    US FDA fortification policy states that random addition of vitamins to food and beverage products is improper.[10]

195.    Such an addition, and in particular the advertising or labeling of such nutrient additions, is inherently misleading as it creates the impression that the advertised junk food is a healthy choice.

196.    That is exactly the consumer misimpression that Defendant attempts to create here.

197.    The Product labels announce on the front of the packages in boldest font that they contain "ANTIOXIDANT VITAMINS".

198.    Real fruit and fruit juice would indeed contain significant amounts of such vitamins as well as other essential nutrients important for the metabolism of those vitamins.

199.    Instead of the significant amounts of naturally occurring vitamins and minerals that

---

[10] "Nutritional Quality of Foods; Addition of Nutrients" in the Federal Register (45 FR 6314), *and see* Code of Federal Regulations (21 CFR 104.20). "The fortification policy discourages indiscriminate addition of nutrients to foods."

would accompany real fruit and fruit juice, a minimal amount of a few synthetic vitamins are "sprinkled in" to the Products in manufacturing. The Products do not contain anything approaching the normal amount of naturally occurring vitamins, minerals, antioxidants, enzymes, or fiber that would be expected if they contained anything other than negligible amounts of real fruit juice.

200.    The Products instead contain large amounts of added sugar as well as artificial sweetener; the added sugar, in fact, robs the body of such essential nutrients.

201.    Excess sugar consumption depletes vitamins and minerals, including those necessary for beneficial antioxidant health effects. Excess sugar consumption prevents antioxidant vitamins and minerals from working effectively in the body.

202.    Excess sugar consumption interferes with the body's metabolism of vitamins including vitamin C.

203.    Excess sugar consumption also depletes and blocks the absorption of vitamin D, calcium, magnesium, potassium, and chromium.

204.    Excess sugar consumption depletes thiamine, riboflavin, niacin, and cellular phosphate necessary for energy metabolism.

205.    Far from being a good source of antioxidants or antioxidant vitamins, the Products contribute to the depletion of all these nutrients from the human body.

206.    Defendants misleadingly label the Products as if they contain healthful fruit juices and supply healthful vitamins, when in fact they consist largely of sugar-water, the excess consumption of which interferes with the proper metabolism of those vitamins.

207.    Even apart from the fortification policy that the Products violate, it is misleading to consumers to trumpet the Products as sources of "ANTIOXIDANT [] VITAMINS."

208.    Rather than being a source of antioxidants, the added refined sugar in the Products depletes the body of antioxidants and blocks vitamin and mineral absorption and cellular benefits.

209.    California state law prohibit labeling that is inherently misleading.

210.    The Products violate federal FDA and state food fortification and labeling policy as well.

### 6. Defendant has known since at least 2014 that the Products' labeling was deceptive.

211.    In 2014, the Center for Science in the Public Interest (CSPI) wrote and published a letter to Defendant informing Defendant that these Product labels were inherently deceptive to consumers.

212.    The CSPI informed Defendant in 2014 that,

"The pictures of fruits and vegetables [on the product packages] in conjunction with

bold antioxidant vitamin claims on V8 packaging, websites, Facebook pages, and other advertising serve to confuse consumers as to which product lines contain juice and which products are primarily sugar water. Campbell misleads consumers by creating the erroneous impression that the vitamins contained in its Products are sourced from the fruits and vegetables depicted on its labels and that all of its Products are wholesome, healthful alternatives to consuming fresh fruits and vegetables."[11]

213.    The CSPI further informed Defendant that "It is also misleading to overstate the highlighted nutrients benefits while omitting the amounts of sugar and other potentially harmful ingredients that comprise the rest of the beverage."[12]

214.    Defendant further misleads consumers by taking advantage of consumers' association of the "V8" brand with healthful fruit and vegetable beverages.

215.    V8 Vegetable Juice, or simply "V8," is the registered trademark name for the well-known vegetable-juice beverage made from eight actual vegetable juices.

216.    "V8" is an established and trusted brand name, a trademark registered with the US Patent and Trademark Office and understood by consumers to represent a natural beverage made from eight actual vegetable juices.

217.    Defendant labels and advertises its "V8 Splash" Products as part of this same brand image that promises wholesome natural beverages, health, well-being, and transparency, promising, "food you can feel good about eating—made with ingredients you can trust."[13]

218.    With respect to every one of the Products this is a false promise.

219.    Defendant misleads consumers and takes advantage of the reputation, image, and consumer acceptance of its V8 juice products to sell consumers the artificially flavored, artificially sweetened, highly sugared junk beverages that are the V8 Splash Products.

220.    Highly sweetened beverages are unhealthy for children.

221.    Sugar-sweetened beverages contribute to childhood obesity, diabetes, and

---

[11] CSPI letter, 2014; https://www.cspinet.org/sites/default/files/attachment/v8demand1.pdf; last visited January 21, 2024.

[12] Id.

[12] Because Defendant concealed this fact from purchasers, the CSPI was not aware at the time that the Products were also artificially flavored.

[13] https://www.campbellsoupcompany.com/our-impact; last visited September 12, 2023.

metabolic syndrome, among other health problems.

222.    At times during the Class period, V8 Splash Products contained as much sugar as Grape Kool Aid.

223.    Artificial sweeteners are also not healthy for young children.

224.    Artificial sweeteners permanently alter children's taste preferences for ultra-sweet foods, setting the stage for a lifetime of unhealthy food and beverage choices.

225.    Highly-sweetened beverages – both sugar-sweetened and artificially-sweetened – strongly influence a child's taste preferences, leading them to prefer and seek out only other highly-sweetened foods, often to the exclusion of all other nutritious food and often at a very young age.

226.    The Products contain large amounts of added sweeteners in the form of both high-fructose corn syrup and artificial sweeteners.

227.    Defendant takes advantage of consumer trust in the V8 reputation and trademark by labeling and selling artificially sweetened, artificially flavored sugar-water packaged as if it were healthy fruit juice.

228.    Defendant intentionally markets the V8 Products to parents as healthy for children.

229.    Defendant misleads consumers into thinking they are buying a healthy blend of fruit and vegetable juices instead of artificially flavored sugar-water.

230.    The V8 Splash Products trick parents into believing they are purchasing and serving fruit-juice-based beverages to their families, beverages that provide at least some of the health benefits of fruit juice.

231.    Defendant's labeling and marketing of the V8 Splash Products is thereby inherently misleading and violates California state consumer protection laws.

**7. The Products also violate federal and California state disclosure laws for chemical preservatives.**

232.    Defendant states on its official product information website, on the "Ingredients" web page, that malic acid is added to their products for its effect as a preservative as well as for flavor.

233.    Defendant's website states, "Malic Acid: We add it for tartness and flavor and to maintain the safety of our products. Although naturally occurring in many fruits and vegetables such as apples and grapes the malic acid we use is manufactured." (emphasis added)[14]

---

[14] https://www.campbells.com/v8/v8-blends-ingredients/; last viewed April 12, 2025.

234. The description, "to maintain the safety of our products" is a preservative effect. Defendant adds artificial dl-malic acid to its Products as a preservative as well as an artificial flavor.

235. Federal and California law require that product labels disclose the presence of any chemical preservative.

236. Chemical preservatives in food products must be identified and disclosed on product labels as chemical preservatives. 21 CFR 101.22.

237. 21 CFR 101.22 (j) states, "A food to which a chemical preservative(s) is added shall, except when exempt pursuant to § 101.100 bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative", "to retard spoilage", "a mold inhibitor", "to help protect flavor" or "to promote color retention"."

238. A statement of [] chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food. 21 CFR 101.22 (c).

239. California's Sherman law, which incorporates by reference all FDA regulations verbatim, therefore makes unlawful the use of chemical preservatives in food products without full and complete label disclosure.

240. None of the Products, which all contain chemical preservatives, include the legally required label disclosures.

241. All the Products included in this action therefore further violate California's Sherman Law as a predicate for California UCL violations because all fail to disclose on the labels that the Product contains a chemical preservative.

**8. Reasonable consumers are deceived by the deceptive and unlawful labeling.**

242. A significant fraction of reasonable, ordinary consumers are deceived by the Product labels and believe the Products contain no artificial flavoring.

243. The "reasonable consumer" is an ordinary, average consumer.

244. Plaintiffs conducted a consumer survey of 200 respondents, ordinary American consumers, to determine the effect of the Product labeling on consumer beliefs.

245. Based on consumer survey, over 50% of ordinary consumers after examining the

Product label believe that the Products are solely naturally flavored and contain no artificial flavors.

246.    Further, over 60% of ordinary consumers surveyed state they are influenced in their purchase decisions by whether a juice-based product contains artificial flavors and will pay more for products that contains no artificial flavors – on average 40 cents more per unit.

247.    The survey showed consumers a V8 Splash product label and asked a series of open-ended and closed-ended questions.

248.    After examining the Product label, respondents who believed the Product was solely naturally flavored responded to open-ended questions about why they thought the Product contained no artificial flavor with responses such as:

◦ "The label states a juice blend and other natural flavors. It doesn't state/list any artificial flavors."

◦ "It states that it's made from a 5% juice blend and other natural flavors."

◦ "The label says 'natural flavors.'"

◦ "It says natural flavors."

249.    After examining the label, based on both the unlawful omission of the artificial flavor disclosure and on express representations on the label, a significant percentage of ordinary consumers believe the Products are solely naturally flavored and contain no artificial flavors.

250.    Respondents who said they believed the Product did or might contain artificial flavors answered open-ended questions as to why they believed this, suggesting a jaundiced attitude about food-product labeling in general including responses such as:

251.    "nothing just took a guess"

252.    "'Natural' flavors aren't necessarily so"

253.    "The dancing around specifically saying if the drink has natural or artificial flavorings."

254.    The back label of the Products is of no help to consumers to clear up even any potential perceived ambiguity.

255.    The back label does not assist reasonable consumers to find out the product contains either artificial flavor or chemical preservative.

256.    The Products' back labels merely identify the ingredient at issue as generic "malic acid," not specifically as dl-malic acid which is the artificial form of the compound, and do not identify the ingredient either on the front label or in the ingredient list as either an artificial flavor or as a chemical preservative as required under federal and state law. 21 CFR 101.22.

257.    A reasonable, ordinary consumer has no reason to believe that the malic acid in the ingredient list is either artificial, or a flavoring, or a preservative.

258.    For the Products' back labels to clear up even any purported, asserted ambiguity, the Product back label ingredient lists must identify the malic acid as an artificial flavor, 21 CFR 101.22 (a), (c), (i), Cal. Health & Saf. Code § 110740, and as a chemical preservative, 21 CFR 101.22 (c), (j), Cal. Health & Saf. Code § 110740. Without this information, the reasonable consumer has no way to know that the chemical is an artificial flavor or a chemical preservative.

259.    Even if a reasonable consumer believes the front label to be ambiguous, turning to the back label does nothing to clear up the deception.

260.    There is no information on either the front or rear label that would inform any reasonable consumer that the Products contain either artificial flavors or chemical preservatives.

**9. Defendant's competitors label their products lawfully.**

261.    Defendant not only deceives and harms consumers but also gains an unfair commercial advantage in the marketplace by labeling the Products deceptively.

262.    Other manufacturers of competing beverage products label their products lawfully.

263.    Other competing manufacturers, offering products whose labels suggest as Defendant does that such products are naturally flavored, truly make their products only with natural ingredients.

264.    Other manufacturers of artificially flavored beverage products accurately and lawfully label their products as "Artificially Flavored" and clearly disclose the presence of artificial flavoring to consumers.

265.    The front labels on competing artificially flavored fruit-flavored juice drinks lawfully disclose the presence of artificial flavors.

266.    Those competing, lawfully labeled products are priced lower because consumers will not pay as much for artificially flavored drinks.

267.    Unlike its competitors, Defendant conceals the use of artificial flavoring, thus deceiving consumers, illegally cutting costs and increasing profits, and competing unfairly and unlawfully in the marketplace against beverage companies whose labels and marketing comply with federal regulations and state law.

268.    Defendant's conduct injures competing manufacturers that do not engage in the same illegal behavior. Those manufacturers compete for market share and limited shelf space, as well as for consumers' buying preferences and dollars. Defendant's competitors do so lawfully. Defendant does not.

**10. Plaintiffs and the Class pay a price premium for Defendant's misbranded Products.**

269.    Plaintiffs purchased the Products in California during the Class Period as defined herein.

270.    Plaintiff Monic Serrano purchased the Products two to three times per month from about 2020 until the present, at Ralphs, Food 4 Less, CVS, and Smart and Final stores located in or near North Hollywood, California.

271.    Plaintiff Debra Shaw purchased the Products one to two times per month beginning in about 2018, at various locations in California, most recently in 2024 at a Walmart warehouse store located at 3750 S. Mooney Boulevard, Visalia, CA 93277.

272.    Plaintiffs purchased the Products at the marked retail prices, typically at average unit prices ranging from $3.00 to $5.00, and from time to time at other promotional prices.

273.    Plaintiffs first discovered Defendant's unlawful conduct in November 2023 when they learned that the Products contained undisclosed artificial flavoring.

274.    Plaintiffs saw, were deceived by, and relied upon the Products' deceptive labeling, including Defendant's omission of the required artificial-flavor disclosures and affirmative false labeling.

275.    Plaintiffs purchased the Products believing they were exclusively naturally flavored, based on the Products' deceptive labeling and failure to disclose the artificially flavoring.

276.    Plaintiffs, and the Class, as reasonable consumers, are not required to subject consumer food products to laboratory analysis, to scrutinize the back of the label to discover that Product front labels are false and misleading or conduct further research to find information that state law and federal regulations require be displayed prominently on the front labels of these Products.

277.    Defendant, but not Plaintiffs, knew or should have known that the Products' labeling was false or misleading and violated federal regulations and California state law.

278.    Because Plaintiffs, like a significant percentage of reasonable, ordinary consumers, reasonably assumed the Products to be free of artificial flavoring based on the Products' labels when they were not, they did not receive the full benefit of their purchases. Instead of receiving the benefit of products free of artificial flavoring, Plaintiffs received Products that were artificially flavored and unlawfully labeled to deceive consumers.

279.    Plaintiffs and the Class would not have purchased the Products in the absence of Defendant's affirmative misrepresentations and omissions. Had Defendant not violated state law

and federal regulations, Plaintiffs and the Class would not have been injured.

280.    American consumers prefer natural food products and are willing to pay significantly more for such products when compared to food products with artificial ingredients.

281.    Products that consumers believe to be naturally flavored sell at a price premium compared to products that contain artificial flavors.

282.    Food products that are naturally flavored and contain only natural flavorings – or are labeled and marketed as if they were only naturally-flavored – therefore command a price premium.

283.    Ordinary consumers are willing to pay on average 40 cents more per full-size bottle for juice and juice-based beverages like the Products if those products are exclusively naturally flavored and contain no artificial flavors.

284.    Plaintiffs and the Class members would not have paid as much for the Products absent Defendant's false and misleading affirmative statements and omissions.

285.    The Products were therefore worth less to Plaintiffs and other Class members than they paid for them.

286.    Defendant's unlawful and deceptive labeling practices and knowing and willful omissions caused Plaintiffs and the Class to lose money. Plaintiffs, and each Class member, altered their financial positions to their detriment and suffered losses equal to the price premium they paid believing the products contained no artificial flavors.

287.    Defendant sold the Products to retail intermediaries for the express purpose of further sale to consumers including Plaintiffs and the Class members.

288.    Plaintiffs and the Class members were intended beneficiaries of the contracts for the sale of the Products between Defendant and retail intermediaries.

289.    Because human memory is imperfect, Plaintiff and class members may mistakenly purchase the Products again in the future, particularly as the packaging and labeling is intentionally deceptive, without realizing that those Products contain artificial flavoring and are still deceptively packaged and labeled.

290.    Plaintiffs may also inadvertently purchase the Products in the future even though the Products contain undisclosed artificial flavor and are falsely labeled and advertised, as they may reasonably but incorrectly assume the unlawful practice of adding undisclosed artificial flavoring ceased.

291.    Plaintiffs intend to, desire to, and will purchase the Products again when they can do so with the assurance that the Products' labels, which warrant that the Products are solely

naturally flavored, are lawful and consistent with the Products' ingredients.

## V.    **DELAYED DISCOVERY**

292.    Plaintiffs did not discover that Defendant's labeling of the Products was false and misleading until November 2023 when they learned the Products contained undisclosed artificial flavoring.

293.    Plaintiffs are reasonably diligent consumers who exercised reasonable diligence in their purchases and consumption of the Products. Nevertheless, they would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law.

294.    Furthermore, Defendant's labeling practices and non-disclosures—in particular, failing to correctly identify the artificial flavors in the ingredient list, or to disclose that the Products contained artificial flavoring, or to accurately identify the kind of malic acid that Defendant puts in the Products, and Defendant's affirmative false labeling statements impeded Plaintiffs' and the Class members' abilities to discover the deceptive and unlawful labeling of the Products throughout the Class Period.

295.    Because Defendant actively concealed the illegal conduct, preventing Plaintiffs and the Class from discovering the violations of state and federal law, Plaintiffs and the Class are entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations.

## VI.    **CLASS ACTION ALLEGATIONS**

296.    Plaintiffs bring this action on behalf of themselves, and all others similarly situated (the "Class") pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

297.    The Class is defined as follows:

> All California residents who purchased the Products in California on or after January 1, 2018, and until the date the Sub-Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

298.    During the Class Period, the Products unlawfully contained an undisclosed artificial flavor and were otherwise improperly and unlawfully labeled.

299.    During the Class Period, Class members purchased one or more of the Products and incurred the same injuries as alleged herein for the Plaintiffs.

300.    The proposed Class meets all criteria for a class action, including numerosity,

typicality, superiority, and adequacy of representation; there is a well-defined community of interest in questions of law and fact common to the Class.

301.    The proposed Class satisfies numerosity. Defendant distributes the products through numerous mass-market retailers nationwide; the Class numbers at least in the tens of thousands of consumers. Individual joinder of the Class members in this action is impractical. Addressing the Class members' claims through this class action will benefit Class members, the parties, and the courts.

302.    The proposed Class satisfies typicality. Plaintiffs' claims are typical of and are not antagonistic to the claims of other Class members. Plaintiffs and the Class members all purchased the Products, were deceived by the false and deceptive labeling, and lost money as a result.

303.    Further both Plaintiffs and every class member were exposed to the fraudulent labeling because the front labels themselves were deceptive, and every purchaser saw the Product labels at the point of purchase.

304.    The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because each Class member's claim is modest, based on the Products' retail purchase price which is generally under $5.00 per unit. It would be impractical for individual Class members to bring individual lawsuits to vindicate their claims. If this action is not brought as a class action, Defendant can continue to deceive consumers, unfairly compete with other companies, and violate federal and state law with impunity.

305.    Because Defendant made misrepresentations on the label of the Products themselves, all Class members including Plaintiffs were exposed to and continue to be exposed to the omissions and affirmative misrepresentations.

306.    The proposed Class representatives satisfy adequacy of representation. The Plaintiffs are adequate representatives of the Class as they seek relief for the Class, their interests do not conflict with the interests of the Class members, and they have no interests incompatible with those of other Class members. Plaintiffs have retained competent counsel in the prosecution of consumer fraud and class action litigation.

307.    There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

308.    Questions of law and fact common to Plaintiffs and the Class include:

     a.     Whether Defendant adds artificial dl-malic acid to the Products;

     b.     Whether the malic acid in the Products acts as a flavoring;

c.   Whether the malic acid in the Products is a chemical preservative;

d.   Whether Defendant unlawfully failed to disclose the artificial flavoring in the Products;

e.   Whether Defendant knowingly and purposefully failed to disclose the artificial flavoring in the Products;

f.   Whether Defendant unlawfully failed to disclose the chemical preservative in the Products;

g.   Whether Defendant violated U.S. Food and Drug Administration labeling regulations and corresponding California state laws;

h.   Whether Defendant's labeling omissions and affirmative false representations constituted false advertising under California state law;

i.   Whether Defendant's conduct constituted violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§1750 *et seq.*

j.   Whether Defendant's conduct constituted violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.*

k.   Whether Defendant's conduct constituted violations of California's False Advertising law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

l.   Whether Defendant's advertising and label statements describing natural fruit and berry flavors were an affirmative representation of the Products' composition creating an express warranty;

m.   Whether Defendant's conduct constitutes a breach of implied warranties under California state statutes and common law;

n.   Whether Defendant's conduct constitutes negligent or intentional misrepresentation;

o.   Whether Defendant's conduct constitutes fraud by omission;

p.   Whether Defendant's conduct constitutes fraudulent inducement.

q.   Whether the statute of limitations should be tolled on behalf of the Class due to Defendant's deceptive conduct in intentionally concealing the presence of artificial flavoring ingredients in the Products;

r.   Whether Plaintiffs and the Class are entitled to restitution or rescission, actual damages, punitive damages, attorneys' fees and

costs of suit, and injunctive relief; and

s.      Whether Plaintiffs and the Class are entitled to any such further relief as the Court deems appropriate.

309.    Class members lost money because of Defendant's unlawful behavior.

310.    Class members altered their financial positions to their detriment and suffered individual loss in an amount equal to the price or the price premium they paid for the Products as falsely labeled and advertised.

311.    Further, Defendant has acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

312.    Class treatment is therefore appropriate for this Action.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION:

### Violation of the California Consumers Legal Remedies Act

Cal. Civ. Code §§ 1750, *et seq*.

313.    Plaintiffs reallege and incorporate by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

314.    The Consumers Legal Remedies Act (CLRA) prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

315.    Plaintiffs and the California Sub-Class are "consumers" as defined by Cal. Civ. Code §1761(d).

316.    The Products are "goods" as defined by Cal. Civ. Code §1761.

317.    Defendant's failure to label the Products in accord with federal and California state labeling regulations, omitting the required information that the Products contain artificial flavoring, was an unfair, deceptive, unlawful and unconscionable commercial practice.

318.    Defendant's conduct violates the Consumer Legal Remedies Act.

319.    As a result of Defendant's violations, Plaintiffs and the Class suffered ascertainable losses in the form of the price premiums they paid for the unlawfully labeled and marketed Products, which they would not have paid had Defendant labeled the Products in accordance with federal regulations and California law, and in the form of the reduced value of the Products purchased compared to the Products as labeled, advertised, and warranted.

320.    On or about February 12, 2024, Plaintiffs sent a notice letter to Campbell regarding the V8 Splash Products which complies with California Civil Code § 1782 (a). Plaintiffs sent

Defendant, individually and on behalf of the proposed Class, a letter via Certified Mail, demanding that Defendant rectify the violations described above by agreeing to be bound by their legal obligations, providing monetary relief, and giving notice to all affected customers of their intent to do so.

321.    Defendant did not comply with the requirements of the notice letter within thirty (30) days. Plaintiffs therefore seek both injunctive relief and damages under § 1770 and § 1782 for those Products.

322.    Plaintiffs subsequently sent a second notice letter to Campbell regarding all other Products included herein which complies with California Civil Code § 1782 (a).

323.    If Defendant does not comply with the requirements of that notice letter within thirty (30) days, Plaintiffs will amend the Complaint accordingly to seek both injunctive relief and damages under § 1770 and § 1782 for the additional Products in addition to the V8 Splash Products.

## SECOND CAUSE OF ACTION:

## Violation of the California Unfair Competition Law

Cal. Bus. & Prof. Code §§ 17200, *et seq.*

Unfair Competition Law, Unlawful Prong

324.    Plaintiffs reallege and incorporate by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

325.    The Unfair Competition Law (UCL) prohibits any "unlawful," "unfair" or "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

326.    The UCL recognizes violations of other federal and state laws and statutes and considers those violations also to constitute violations of California law when the violations occur in California.

327.    Defendant's practices as described herein were at all times during the Class Period and continue to be unlawful under, inter alia, FDA regulations and California's Sherman Law.

328.    Among other violations, Defendant's conduct in unlawfully distributing the Products in commerce in California violated U.S. FDA packaging and labeling regulations.

329.    The Products' front labels fail to disclose that the Products contain synthetic artificial flavoring in violation of 21 CFR § 101.22 and California's Sherman Law and are therefore misbranded.

330.    The Products contain dl-malic acid.

331.    The dl-malic acid is an artificial flavoring material, and is included in the Products

to create, simulate, resemble, and reinforce the Products' characterizing fruit and berry flavors.

332.    The dl-malic acid in the Products is not derived from any natural material as defined in 21 CFR § 101.22 and is therefore by law an artificial flavor.

333.    Defendant failed to inform consumers of the presence of the artificial flavor in the Products, on either the front or back-label as required by law and distributed the Products in interstate commerce and in California.

334.    Defendant also failed to inform consumers of the presence of chemical preservatives in the Products as was required by both federal and California law.

335.    The Products also fail to comply with federal and state "presence or absence" ingredient labeling laws.

336.    Defendant's practices are therefore unlawful as defined in Section 17200, et seq., of the California Civil Code.

337.    Pursuant to California Business & Professions Code §17203, Plaintiffs seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and require Defendant to return the full amount of money improperly collected to all those who purchased the Products.

338.    Unfair Competition Law, Unfair Prong

339.    Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unfair . . . business act or practice."   Defendant's practices violate the Unfair Competition Law "unfair" prong as well as the "unlawful" prong.

340.    Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers.

341.    It is further unfair to consumers that the Products, in addition to the violations of law alleged above, also violated FDA and state policy regarding food fortification.

342.    Defendant's sale and distribution of misbranded Products in violation of federal and California state law and policy may have some utility to Defendant in that it allowed Defendant to sell the Products to consumers who otherwise would not purchase an artificially flavored food or beverage product at the retail price or at all if it were labeled correctly, and to realize higher profits than if the Products were formulated or labeled lawfully. But this utility is small and is far outweighed by the gravity of the harm Defendant inflicted upon California consumers.

343.    Defendant's conduct also injures competing food product manufacturers,

distributors, and sellers, who do not engage in the same unlawful, unfair, and unethical behavior.

344.     Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations and policies cited herein.

345.     Plaintiffs' and the California class's purchases of the Products took place in California.

346.     Defendant labels the Products in violation of federal regulations and California law requiring truth in labeling.

347.     Defendant consciously failed to disclose material facts to Plaintiffs and the California Class in Defendant's advertising and marketing of the Products.

348.     Defendant's conduct is unconscionable because in addition to the breach of consumer trust, Defendant willfully violated 21 C.F.R. § 101.22(c), which requires all foods containing artificial flavoring to include a "statement of artificial flavoring . . . likely to be read by the ordinary person under customary conditions of purchase and use of such food."

349.     Defendant's conduct is "unconscionable" because it violates, inter alia, 21 C.F.R. § 101.22, which requires all food products distributed in commerce in the U.S. for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label, and that all chemical preservatives be similarly disclosed, as well as California's Health and Safety Code.

350.     Defendant intended that Plaintiffs and the California Class rely on Defendant's acts or omissions so that Plaintiffs and the other California Class members would purchase the Products.

351.     Had Defendant disclosed all material information regarding the Products in their advertising and marketing, Plaintiffs and the California Class would not have purchased the Products or would have paid less for the Products.

352.     Plaintiffs and the California Class suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: they were denied the benefit of the bargain when they purchased the Products based on Defendant's violation of the applicable laws and regulations, and purchased the Products rather than competitors' products which are lawfully labeled, and are either less expensive or contain no artificial flavoring or chemical preservatives or are otherwise accurately labeled.

353.     Plaintiffs and the California Class suffered an ascertainable loss of money. Defendant's acts, omissions and practices detailed herein proximately caused Plaintiffs and other

members of the California Class to suffer an ascertainable loss in the form of, inter alia, monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

354. Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code § 17200.

355. Pursuant to California Business & Professions Code §17203, Plaintiffs seek an order requiring Defendant to immediately cease such acts of unlawful and unfair business practices and requiring Defendant to return the full amount of money improperly collected from Plaintiffs and the California Class.

**THIRD CAUSE OF ACTION:**

**Violations of California False Advertising Law**

Cal. Bus. & Prof. Code §§ 17500, *et seq.*

356. Plaintiffs reallege and incorporate by reference every allegation contained elsewhere in this Complaint as if fully set forth herein.

357. Defendant distributed, in California and in interstate commerce, Products that unlawfully fail to disclose artificial flavoring and chemical preservatives on their packaging as required by federal food labeling regulations and further violate federal and state labeling laws and policies regarding ingredient "presence or absence" and food fortification.

358. The Products' labeling and advertising in California falsely represent the Products as if they were solely naturally flavored and contained no chemical preservatives.

359. Under California's False Advertising Law, Business and Professions Code §17500 et seq, it is unlawful "to make or disseminate or cause to be made or disseminated before the public in this state . . . any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof. Code §17500.

360. The labeling and advertising statements on the Products conceal the fact that the Products contain artificial flavor and chemical preservative, and many contain little or no actual fruit or fruit juice, and Defendant, at a minimum by the exercise of reasonable care, should have known that the labeling was false and misleading.

361. Defendant profited from the false advertising displayed on the Products' labels.

362. Defendant's conduct violates California's False Advertising Law.

363.    Plaintiffs and the Class are therefore entitled to the return of money Defendant improperly collected from all those who were exposed to the above-described false advertising and who purchased the Products when they otherwise would not have or who paid a price premium for the falsely advertised Products.

**FOURTH CAUSE OF ACTION:**

**Breach of Express Warranties**

Cal. Comm. Code § 2313

364.    Plaintiffs reallege and incorporate by reference the allegations found elsewhere in the Complaint as if set forth in full herein.

365.    The Products' front labels misleadingly claim, by operation of California law, that the Products are flavored only with the listed characterizing flavors.

366.    These labels warrant that the Products are flavored only with natural juices and natural flavors.

367.    The Products' front labels fail to disclose the use of artificial flavoring "immediately and conspicuously preced[ing] or follow[ing]" the names of the characterizing flavors, as required by law. See, e.g., 21 C.F.R. 101.22(i)(3).

368.    The Products front labels further display prohibited affirmative label claims that the Products are "[Fruit] flavored," or "Naturally flavored," or are "100% JUICE," or include only "other natural flavors" rather than artificial flavors.

369.    Defendant's failure to disclose the use of artificial flavoring on the Products' front labels, and affirmative prohibited label claims such as "100% Juice", by operation of law inform consumers that the Products do not contain artificial flavors.

370.    The Products' front labels falsely warrant by operation of law that the Products are flavored only with the listed or depicted fruits and berries and natural flavors.

371.    Defendant's affirmations of fact, promises, and warranties that the Products contained only natural flavors or were "100% JUICE" became part of the basis of the bargain between the parties and thus constituted express warranties.

372.    The Products did not conform to Defendant's affirmations of fact, promises, and warranties because they contain artificial flavors or were not "100% Juice."

373.    As a result, Plaintiffs and the California Class did not receive goods as warranted by Defendant.

374.    Defendant breached their express warranties that the Products contained only natural flavors.

375.    Defendant sold the Products under contracts to retail intermediaries who sold the Products to Plaintiffs and the Class members.

376.    Defendant sold the Products to retail intermediaries for the express purpose of further sale to consumers including Plaintiffs and the Class members.

377.    Plaintiffs and the Class members are intended beneficiaries of the contracts for the sale of the Products between Defendant and retail intermediaries.

378.    As intended beneficiaries of the contracts for sale of the Products by the manufacturer, as well as because the warranties appear on the Product labels, Plaintiffs and the Class are entitled to enforce those warranties.

379.    Within a reasonable amount of time after Plaintiffs discovered that the Products contained synthetic flavoring ingredients, Plaintiffs notified Defendant of breach of warranties.

380.    As a proximate result of this breach of express warranties, Defendant damaged Plaintiffs and the California Class, in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION:

### Breach of Implied Warranties

Cal. Comm. Code § 2314

381.    Plaintiffs reallege and incorporate all of the allegations elsewhere in the complaint as if set forth in full herein.

382.    Defendant's label representations also create implied warranties that the Products are suitable for a particular purpose, specifically as naturally flavored beverage products containing no artificial flavors. Defendant breached this warranty as well.

383.    Because the Products do not display an "artificially flavored" disclosure as required by law and describe the Products' flavoring as "other natural flavors," the Products' front labels misleadingly warrant that the Products are not flavored with artificial flavoring ingredients and are flavored solely with natural ingredients comprising the characterizing flavors.

384.    As alleged in detail above, at the time of purchase Defendant had reason to know that Plaintiffs as well as all members of the California Class intended to use the Products as naturally flavored products that did not contain artificial flavoring.

385.    This became part of the basis of the bargain between the parties.

386.    Based on that implied warranty, Defendant sold the goods to Plaintiffs and other Class members who bought the goods from Defendant.

387.    At the time of purchase, Defendant knew or had reason to know that Plaintiffs and the California Class members were relying on Defendant's skill and judgment to select or furnish

products that were suitable for this particular purpose, and Plaintiffs justifiably relied on Defendant's skill, judgment, and adherence to good faith and fair dealing practices.

388. The Products were not suitable for this purpose.

389. Plaintiffs and the California Class, purchased the Products reasonably believing they had the qualities they sought, based on the deceptive advertising and labeling, but the Products were actually unsatisfactory for the reasons described herein.

390. In addition, Defendant breached the implied warranty of merchantability because the Products were not merchantable in California, as they were not of the same quality as other products in the category generally acceptable in the trade.

391. The Products further would not pass without objection in the trade when packaged with their existing labels because the Products were misbranded and illegal to sell in California. See Cal. Comm. Code 2314(2)(a).

392. Defendant breached the implied warranty of merchantability.

393. The Products also were not acceptable commercially and breached their implied warranty because they were not adequately packaged and labeled as required. Cal. Comm. Code 2314(2)(e).

394. The Products also were not acceptable commercially and breached their implied warranty because they did not conform to the promises or affirmations of fact made on the containers or labels, Cal. Comm. Code 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).

395. By offering the Products for sale and distributing the Products in California, Defendant also warranted that the Products were not misbranded and were legal to sell in California.

396. Because the Products were misbranded in multiple regards and were therefore illegal to sell or offer for sale in California, Defendant breached this warranty as well.

397. As a result of this breach, Plaintiffs and the California Class did not receive goods as impliedly warranted by Defendant.

398. Defendant sold the Products under contracts to retail intermediaries who sold the Products to Plaintiffs and the Class members.

399. Defendant sold the Products to retail intermediaries for the express purpose of further sale to consumers including Plaintiffs and the Class members.

400. Plaintiffs and the Class members are intended beneficiaries of the contracts for the sale of the Products between Defendant and retail intermediaries.

401.    As intended beneficiaries of the contracts for sale of the Products by the manufacturer, as well as because the warranties appear on the Product labels, Plaintiffs and the Class are entitled to enforce those warranties.

402.    Within a reasonable amount of time after the Plaintiffs discovered that the Products contained synthetic ingredients, Plaintiffs notified Defendant of such breach.

403.    As a proximate result of Defendant's breach of warranty, Plaintiffs and other California consumers have been damaged in an amount to be determined at trial.

404.    As a result, Plaintiffs and the California Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

### SIXTH CAUSE OF ACTION:

### Intentional Misrepresentation

Cal Civ. Code §§ 1709-1710

405.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

406.    Defendant represented to Plaintiffs and the Class directly on the Products' labels that the Products were flavored solely with natural flavors and contained no artificial flavors.

407.    Defendant had no reasonable basis for representing that the Products were free of artificial flavors.

408.    Defendant also represented on many of the Product labels that those Products consisted of "100% JUICE."

409.    These representations were false. Defendant admits, and Plaintiffs confirmed by analytical testing, that the Products contain artificial dl-malic acid.

410.    Defendant knew that these representations were false. Defendant admits that it uses artificial malic acid, not natural, and that the dl-malic acid is used to provide a tart flavor in its products.[15]

411.    Defendant represented that the Products were free of artificial flavors although Defendant knew that the Products contain artificial dl-malic acid and that this artificial compound functions as a flavoring.

412.    Defendant willfully deceived Plaintiffs and the Class by failing to disclose the fact

---

[15] https://www.campbells.com/v8/v8-blends-ingredients, last visited September 8, 2023.

that the Products were flavored by an artificial flavoring agent and intended that this deceit would influence consumer purchasing decisions to the detriment of those purchasing the Products.

413. Defendant concealed the fact the Products contained an artificial flavor from Plaintiffs and the putative Class even though Defendant knew that the presence or absence of artificial flavoring is important to American consumers.

414. Defendant also misrepresented the Products as containing no chemical preservatives.

415. The Products all contain chemical preservatives.

416. As a sophisticated manufacturer of foods and beverages, Defendant knew that whether a beverage contains artificial flavoring or chemical preservative is a material fact to American consumers that can influence the beverages they purchase and how much they are willing to pay.

417. Defendant intended that Plaintiffs and other consumers would rely on these false representations when choosing to purchase the Products rather than those of competing beverage manufacturers.

418. Plaintiffs and the Class reasonably relied upon the false representations.

419. Plaintiffs and other consumers also reasonably relied upon Defendant's false representations since a reasonable consumer can rely on food and beverage companies to comply with federal regulations and state product labeling law.

420. Reasonable consumers are not required to send samples of food products for analytical laboratory testing before consuming them.

421. Plaintiffs and the Class had no reasonable way to ascertain that the Products contained artificial flavoring or chemical preservative in contradiction to the affirmative false representations on the Product labels.

422. Defendant as a sophisticated food manufacturer had superior knowledge compared to Plaintiffs and the Class regarding ingredients in the Products.

423. Plaintiffs and the Class were financially harmed when they paid more for the beverages than they would have paid had Defendant disclosed the presence of an artificial flavoring agent or chemical preservative, or simply purchased the Products based on Defendant's unlawful labeling.

424. Plaintiffs' and the Class's reliance on Defendant's misrepresentations was a substantial factor in causing their financial harm.

## SEVENTH CAUSE OF ACTION:

### Negligent Misrepresentation

Cal. Civ. Code §§ 1709-1710

425.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

426.    Defendant had a duty to disclose to Plaintiffs and the California Class, on the front label of the Products its use of artificial flavoring ingredients pursuant to California and federal law.

427.    Defendant further had a duty to disclose that the Products contain chemical preservatives.

428.    Defendant was in a superior position regarding that information such that reliance by Plaintiffs and the California Class, was justified. Defendant possessed the skills and expertise to know this type of information would influence a consumer's purchasing decision.

429.    During the Class Period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the Products, including the use and presence of artificial flavoring and chemical preservative.

430.    The label representations negligently misrepresented the Products as if they were exclusively naturally flavored and contained no chemical preservative.

431.    Defendant was negligent in distributing Products labeled as if they were exclusively naturally flavored and in failing to identify the Products as artificially flavored.

432.    Defendant represented the Products to Plaintiffs and the California Class as solely naturally flavored as if this were true.

433.    Defendant intended for Plaintiffs and the Class to rely on these representations.

434.    Defendant's representations were not true.

435.    Defendant's Products are not exclusively naturally flavored but are instead artificially flavored as described herein.

436.    Defendant's Products also contain chemical preservatives as described herein.

437.    Defendant failed to secure a reasonable basis for believing and was careless in ascertaining the truth of its representations that the Products were solely naturally flavored and contained no artificial flavorings.

438.    Plaintiffs and the California Class could not reasonably have discovered the use of artificial flavoring or chemical preservative in the Products.

439.    Plaintiffs and the California Class reasonably relied on these representations. They

were unaware of Defendant's unlawful misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

440. Because of the Products' relatively small purchase price, reasonable consumers would not spend the time and money necessary to investigate whether Defendant's representations that the Products did not contain artificial flavoring or chemical preservatives were false.

441. Defendants' representations that the Products contain no artificial flavoring would not be obviously false to a reasonable consumer.

442. Reasonable consumers should not have to subject food products to analytical laboratory testing before consumption to determine whether product label statements are true or false.

443. Defendant as a sophisticated manufacturer of beverages had superior knowledge compared to Plaintiffs and the Class regarding the presence or role of any ingredients in the Products.

444. Defendant harmed Plaintiffs and the California Class, as alleged herein. Plaintiffs and the California Class would not have purchased the Products or would have paid less for the Products than they did if the true facts had been known.

445. Plaintiffs and the California class's reliance on Defendant's misrepresentations was a substantial factor in that harm.

446. As a result, Plaintiffs and the California Class are entitled to injunctive and equitable relief, rescission or restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

### EIGHTH CAUSE OF ACTION:

### Fraud by Omission

Cal Civ. Code §§ 1709-1710

447. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

448. Plaintiffs bring this claim for fraud by omission pursuant to California Civil Code §§ 1709-1710 et seq.

449. Defendant omitted material facts, in whole or in part, with the intent to induce Plaintiffs and the members of the Class to purchase the Products and pay premium prices for the Products. Specifically, Defendant actively concealed the truth about the Products by failing to provide the legally required "artificially flavored" disclosure on the front label of the Products and chemical preservative disclosure on the back label as required by California and federal law.

450.    Because of the Products' relatively small purchase price, reasonable consumers would not and should not have to spend the time and money necessary to investigate whether Defendant's labeling omitting legally required disclosures was accurate.

451.    Defendant further omitted Product label disclosures regarding the "presence of absence" of labeled ingredients.

452.    Defendant fraudulently omitted required label disclosures that some of the Products contain little or no actual fruit or fruit juice.

453.    Defendant, as a sophisticated food and beverage manufacturer had superior knowledge compared to Plaintiffs and the Class regarding ingredients in the Products.

454.    Plaintiffs and the Class were unaware of this omitted material fact and would not have purchased the Products, or would have paid less for the Products, if they had known of the omitted fact.

455.    Plaintiffs and the Class suffered injuries that were proximately caused by Defendant's omissions of material facts.

456.    Defendant's omissions were a substantial factor in causing the harm suffered by Plaintiffs and the Class, as they would not have purchased the Products at all or would have paid less for the Products than they did if these material facts were properly disclosed.

457.    As a result, Plaintiffs and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**NINTH CAUSE OF ACTION:**

**Fraud in the Inducement**

Cal Civ. Code §§ 1709-1710

458.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

459.    Defendant represented to Plaintiffs and the Class that the Products were flavored solely with natural juices and natural flavors.

460.    These representations were false; the Products contained artificial flavoring.

461.    The false representations were seen by Plaintiffs and by all Class members; the false representations were made on the front labels of each of the Products.

462.    Plaintiffs and the Class purchased the Products based on this false representation.

463.    Defendant further falsely represented to Plaintiffs and the Class that the Products contained no chemical preservatives.

464.    Defendant further falsely represented to Plaintiffs and the Class that many of the Products contained significant quantities – or any – fruit or berry juices when they did not.

465.    Defendant further falsely represented to Plaintiffs and the Class that many of the Products contained significant quantities of useful "Antioxidants" when the Products contained far less than would be expected if they were made from actual fruit juice.

466.    As a sophisticated manufacturer of foods and beverages, Defendant knew that these representations were false.  Defendant admits that it uses artificial malic acid to provide tart fruit flavors in the Products and for its chemical preservative effects.

467.    Defendant labeled the Products as if the Products were free of artificial flavors although Defendant knew that the Products contain artificial dl-malic acid that functioned as a flavoring.

468.    Defendant willfully deceived Plaintiffs and the Class by failing to disclose the fact that the Products were flavored by an artificial flavoring agent and intended that this deceit would alter consumer purchasing decisions to the detriment of those purchasing the Products.

469.    Defendant concealed the fact the Products contained an artificial flavor from Plaintiffs and the putative Class even though Defendant knew that the presence or absence of artificial flavoring is important to a large percentage of American consumers.

470.    As a sophisticated manufacturer of foods and beverages, Defendant knew that whether a beverage contains artificial flavoring or chemical preservative is a material fact to American consumers which can influence which beverages they purchase and how much they are willing to pay for any given beverage.

471.    Defendant intended that Plaintiffs and other consumers would rely on these false representations when deciding to purchase the Products rather than those of competing beverage manufacturers.

472.    Reasonable consumers rely on and expect food and beverage manufacturers to comply with federal regulations and state laws requiring the disclosure of artificial flavoring agents and chemical preservatives.

473.    Defendant, a manufacturer and mass-marketer of beverage products, had superior knowledge to Plaintiffs and the Class regarding the ingredients in the Products.

474.    Defendant's unlawful affirmative representations and fraudulent omissions induced Plaintiff and the Class to purchase the Products at the listed retail prices.

475.    Plaintiffs and the Class were financially harmed when they paid more for the beverages than they would have paid had Defendant disclosed the presence of an artificial

flavoring agent or would not have purchased the Products at all had Defendant made the legally required disclosures.

476.     Plaintiffs' and the Class's reliance on Defendant's misrepresentations were a substantial factor in causing their financial harm.

477.     Because Plaintiffs and the Class were fraudulently induced to provide monies in exchange for the mislabeled and misrepresented Products, Plaintiffs and Class members were injured financially and are entitled to a refund of the purchase prices they paid.

## VIII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated in New Jersey, California, and in the U.S., pray for judgment against Defendant as follows:

A.     An order confirming that this action is properly maintainable as a class action as defined above, appointing Plaintiffs and their undersigned counsel to represent the Class, and requiring Defendant to bear the cost of class notice;

B.     An order declaring that the conduct complained of herein violates the California CLRA;

C.     An order declaring that the conduct complained of herein violates the California UCL;

D.     An order declaring that the conduct complained of herein violates the California FAL;

E.     An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

F.     An order declaring that Defendant is liable for intentional misrepresentations;

G.     An order declaring that Defendant is liable for fraud in the inducement;

H.     An order requiring Defendant to disgorge any benefits received from Plaintiffs and the Class and any unjust enrichment realized as a result of the improper and misleading labeling, advertising, and marketing of the Products;

I.     An order voiding the sale of the Products due to fraudulent inducement of the purchases;

J.     An order requiring Defendant to pay restitution and damages to Plaintiffs and Class members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable or negligent acts;

K.     An award of punitive damages in an amount to be proven at trial;

L.     An order enjoining Defendant's deceptive and unfair practices;

M.     An order requiring Defendant to conduct corrective advertising;

N.     An award of pre-judgment and post-judgment interest;

O.     An award of mandatory attorney fees and costs; and

P.     Such other and further relief as this Court may deem just, equitable, or proper.

### IX.    JURY DEMAND

Plaintiffs demand a trial by jury on all claims for damages. Plaintiffs do not seek a jury trial for claims sounding in equity.

Dated: May 1, 2025          Respectfully Submitted,

By: */s/ Lee Albert*
GLANCY PRONGAY & MURRAY LLP
Lee Albert (LA-8307)
230 Park Avenue, Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lalbert@glancylaw.com

GLANCY PRONGAY & MURRAY LLP
Marc L. Godino (admitted pro hac vice)
Keven F. Ruf (admitted pro hac vice)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  mgodino@glancylaw.com
Email:  kruf@glancylaw.com

*Attorneys for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2025, a copy of the foregoing document was filed electronically using the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the CM/ECF system.

<u>*/s/ Lee Albert*      </u>
Lee Albert